WILLIAM SPICER v. D. S. WILLIAMSON and the BOARD OF COUNTY
COMMISSIONERS of DUPLIN COUNTY.

(Filed 31 March, 1926.)

#### 1. Physicians and Surgeons—Services—Implied Promise to Pay.

The mere request of a stranger to a physician to render needed service
to another, to whom he owes no duty, is insufficient, in the absence of an
express promise to pay, to render him liable for the value of the services
the physician rendered.

#### 2. Same—Sheriffs—Wounded Prisoners.

A sheriff of a county is not responsible for payment for the services of
a physician whom he has requested to attend to his prisoner, seriously
wounded in resisting arrest, in the absence of a special promise to pay
them.

#### 3. Same—Evidence—Questions for Jury.

*Held,* under the evidence in this case, an issue was raised for the
determination of the jury as to whether the physician rendered services
to a wounded prisoner in the sheriff's custody upon the sheriff's implied
promise to personally pay him therefor.

#### 4. Same—Counties—County Commissioners.

Where a sheriff has in an emergency requested a physician to render
services to a prisoner in his custody who had been badly wounded in
resisting arrest, and there is evidence tending to show that under the
circumstances he could not have obtained in time an order from the
board of county commissioners that would assume responsibility on
behalf of the county to pay them, the objection of the commissioners
that under such circumstances the county would not pay for them, and
that liability would only attach as to those prisoners delivered at the
county jail, is untenable. C. S., 1317, 1346, 1347.

#### 5. Same—Damages—Questions for Jury.

Where the county is liable for the services of a physician rendered at
the request of the sheriff to a wounded prisoner in his custody, upon an
implied promise to pay for them, an issue is raised for the jury to de-
termine the reasonable amount to be paid therefor.

APPEAL by plaintiff from *Thorne, Emergency Judge,* at December
Term, 1925, of DUPLIN. Reversed.

This is an action commenced by plaintiff, a physician and surgeon,
in the Superior Court of Wayne County, to recover of defendant, D. S.
Williamson, for professional services rendered to and hospital expenses
incurred in behalf of Peter Camel, at the request of said defendant.
Peter Camel was a prisoner in the custody of D. S. Williamson, who
was sheriff of Duplin County; he was suffering from the effects of a
wound inflicted at the time of his arrest by a deputy sheriff of Duplin

County, upon a charge of robbery and larceny, committed in said county. Defendant, D. S. Williamson, denied liability; he alleged that the board of county commissioners of Duplin County was liable for the amount due plaintiff for said services and hospital expenses. Upon his motion, the board of county commissioners of Duplin County was made a party defendant, and the action was removed from Wayne to Duplin County for trial. The board of county commissioners denied liability, on the ground that the said board had not authorized the defendant, D. S. Williamson, sheriff of said county, to take the prisoner to plaintiff for treatment; it alleged that it had not requested or authorized plaintiff to render any services to or to incur any hospital expenses for Peter Camel.

At the close of all the evidence, upon motion of each defendant, there was a judgment of nonsuit, dismissing the action. From this judgment, plaintiff appealed.

*Langston, Allen & Taylor for plaintiff.*
*H. D. Williams and R. D. Johnson for defendant, D. S. Williamson.*
*Gavin & Boney for defendant, Duplin County.*

CONNOR, J. It is admitted that plaintiff, a physician and surgeon, who owns and operates a hospital in Goldsboro, N. C., received into said hospital, as a patient, Peter Camel, and thereafter rendered professional services to and incurred hospital expenses for said Peter Camel, at the request of defendant, D. S. Williamson, sheriff of Duplin County. At the time of such request, Peter Camel was a prisoner in the custody of the said sheriff; he had been arrested by a deputy sheriff, and delivered into the custody of the sheriff, upon a charge of robbery and larceny, committed in Duplin County. Immediately before his arrest, the prisoner had been shot and wounded by the deputy sheriff; he had resisted arrest and, when pursued by the officer, had fired twice at him, with his pistol, thus not only resisting arrest, but also assaulting the officer, with a deadly weapon. When the prisoner came into the custody of the sheriff, his condition, resulting from his wound, was such as to require immediate medical and surgical treatment. The physician who had usually attended prisoners in the custody of the sheriff, and whose bills for services to such prisoners had been paid by the board of county commissioners, was called by the sheriff to see the prisoner, and advised the sheriff that he was unable to care for the prisoner—that his condition required the immediate attention of a surgeon in a hospital, equipped to care for such cases. It was impracticable for the sheriff to consult the board of county commissioners as its members lived at distances

of more than fifteen miles from the place where the prisoner was shot. Acting upon the advice of the physician, the sheriff took the prisoner, in his automobile, at once to Goldsboro, and requested plaintiff to receive him into his hospital as a patient, and to render him such professional services, as in plaintiff's judgment, his condition required. Plaintiff knew that defendant was sheriff of Duplin County, and that Peter Camel was a prisoner in his custody, charged with a violation of the criminal law in Duplin County. Plaintiff received Peter Camel into his hospital and within a few days thereafter performed an operation upon him because of his condition, caused by the gun-shot wound inflicted by the deputy sheriff while undertaking to arrest the prisoner. Plaintiff presented his bill to the sheriff, who filed it with the board of county commissioners, at their next monthly· meeting thereafter; the board declined to pay the bill.

The board of county commissioners did not authorize the sheriff to take the prisoner to plaintiff, and had no notice of these facts until after the services were performed and the expense incurred. It had been the custom of the board of county commissioners to pay bills for medical attention rendered to prisoners in the custody of the sheriff, when presented by him to the board at its regular monthly meetings. These bills had been for small amounts. The board is composed of three members, two of whom live about 18 miles from the county seat, and one about 16 miles.

"The rule that where a person requests the performance of a service, and the request is complied with, and the service performed, there is an implied promise to pay for the services, does not apply where a person requests a physician to perform services for a patient, unless the relation of that person to the patient is such as raises a legal obligation on his part to call in a physician and pay for the services, or the circumstances are such as to show an intention on his part to pay for the services, it being so understood by him and the physician." This rule as stated in 30 Cyc., 1597, is supported by authorities cited in the notes, and commends itself to us as sound in law, and just in policy. But for the exception to the general rule, a stranger or neighbor might hesitate to call a physician to the aid of one in need of medical services; the exception is not unjust to the physician who may require an express contract for payment of the value of his services, before responding to the call, or rendering the services. *Smith v. Riddick,* 50 N. C., 343. "The authorities generally support the broad proposition that a mere request by one person to a physician to render services to another to whom the person making the request is under no obligation to furnish medical care, raises no implication of a promise to pay for the services.

Public policy favors the encouragement of those who will summon medical aid for the unfortunate sick who cannot act for themselves." 21 R. C. L., 412(55); *McGuire v. Hughes,* 207 N. Y., 516, 101 N. E., 460, 46 L. R. A. (N. S.), 577 and notes.·

It cannot be held that a sheriff, or other officer, is under a legal obligation to provide medical attention for a prisoner in his custody, for the payment of which he is personally liable. The relation between the officer and his prisoner is not voluntary on the part of either. On the part of the officer, it results from the performance by him of a public duty, and while he is liable personally both to the prisoner and to the public for a breach of duty to either—for which he may be required to answer in damages to the prisoner, or upon indictment to the public— he cannot be held liable for medical or surgical services required by the condition of the prisoner, at the time of his arrest, or after he had been taken into custody. The prisoner by his arrest is deprived of his liberty for the protection of the public; it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself. The officer is but the agent of the public, and ought not to be held personally liable for the performance by him, as such agent, of a duty which the public owes to his prisoner, unless he expressly agrees to assume such liability.

There was evidence upon the trial of this case, which should have been submitted to the jury upon plaintiff's allegation that defendant, D. S. Williamson, expressly agreed to pay plaintiff for his services to Peter Camel. An agreement to pay for the services required, cannot be implied merely from the request. Plaintiff testified that after he had concluded, from his examination of Peter Camel, that a difficult operation was advisable, he said to the defendant, "My advice is to consult the commissioners, and see if they will stand for it." Defendant replied, "They will meet tomorrow morning on some road matters. I will talk to them about it." Plaintiff said, "If it will be any help to you, I will go down and take these pictures and explain them." When the plaintiff went to the county seat the next day, and it was ascertained that the commissioners would not meet, as had been expected, plaintiff said to defendant, "What do you want me to do?" Defendant replied, "He is a human being; he is under my charge; I don't know anything to tell you except to go ahead and do the best you can to save him." It was after this conversation that plaintiff performed the operation, and incurred the larger part of the expenses. It was for the jury to say upon this and other evidence submitted to them, whether defendant expressly agreed to pay for plaintiff's services to Peter Camel. If the jury shall find that at the time defendant requested plaintiff to perform

the services for Peter Camel, he intended to pay for such services, that it was so understood between plaintiff and defendant, and that plaintiff rendered such services in reliance upon the agreement of defendant to pay for same, personally, then defendant is personally liable to plaintiff for the value of the services. There was error in the judgment dismissing the action as against defendant, D. S. Williamson. An issue should have been submitted to the jury, in order that the jury might determine whether or not defendant expressly agreed to pay for the services rendered by plaintiff to Peter Camel, pursuant to defendant's request. The burden, upon this issue will, of course, be upon plaintiff. There is evidence, however, to sustain an affirmative answer. The evidence introduced on the trial was sufficient for the consideration of the jury upon the allegation that defendant was liable to plaintiff upon an express contract.

Defendant, the board of county commissioners, contends that it is not liable for the reason, first, that it had not authorized the sheriff to request plaintiff to perform the services or incur the expenses for Peter Camel, and, second, that the board is liable for medical services rendered only to prisoners confined in jail—that it is not liable for such services to one who is in the custody of the sheriff, following an arrest, and who had not been committed to jail, after a preliminary trial, or upon conviction.

It has been stated as a general rule of law, that, in the absence of some express provisions of the law, the public is not liable to a physician or surgeon for services rendered prisoners, even though they are insolvent, and unable to pay for such services themselves. *Nolan v. Cobb Co.*, 141 Ga., 385, 81 S. E., 124, 50 L. R. A. (N. S.), 1223 and note. It has also been held, in some jurisdictions, that by virtue of statutes applicable, liability of the public for medical services is restricted to prisoners confined in jail. *Malone v. Escambia County* (Ala.), 22 So., 503; *Gray v. Coahoma County* (Miss.), 16 So. 903. The board of commissioners was held liable, in *Lamar v. Board of Com.* (Ind.), 30 N. E., 912, for services rendered by a physician, at the request of a jailer, to a prisoner who suddenly became sick, notwithstanding a statute under which the board of commissioners had elected a health officer whose duty it was to care for prisoners in the county jail. In that case, it appeared that the health officer lived at such a distance from the jail, that his attendance could not be had to meet the emergency caused by the sudden illness of the prisoner. In the opinion of the Court, it is said: "We cannot believe that when a man was in jail, and in need of medical services, under the emergency existing in this case, the law intended that the prisoner should be left to suffer

and perhaps to die, because the services of the secretary of the board of health could not be obtained in time to save his life, or that the county would not be liable for services rendered to the prisoner by a physician employed by the jailer who had the prisoner in charge."

It is clearly the duty of the board of commissioners of a county, in this State, as prescribed by statute, to provide for necessary medical attention to a prisoner confined in the county jail, whether such prisoner has been committed to jail as the result of a preliminary trial, or upon a final judgment on his conviction of a violation of law. The board of commissioners owes no less duty to a person, lawfully in the custody of the sheriff, awaiting a preliminary trial, and confined in jail, because he is unable to give bond for his appearance at such trial. A reasonable construction of these statutes extends this duty of the board to a person in the lawful custody of the sheriff, who is unable, because of the condition of the prisoner, to take him at once to the jail. The suggestion in the brief for the board of commissioners filed in this Court, that the board owes no duty to provide for necessary medical attention to a prisoner until he has actually been placed in jail, does not commend itself to us as within a reasonable or necessary construction of the statutes applicable. C. S., 1317, 1346, 1347.

The fact that the board of county commissioners of Duplin County had not authorized the sheriff to request plaintiff to render professional services to his prisoner, prior to the performance of such services, upon the facts as shown by the evidence in this case, does not relieve the board of liability for the reasonable value of such services. Upon these facts, it was the duty of the board of county commissioners to provide necessary medical services for Peter Camel, after he was arrested and taken into custody by the sheriff. In the emergency confronting the sheriff, it was his duty, as sheriff, to procure proper medical attention for his prisoner. Ordinarily, the sheriff or other officer, having in his custody a prisoner whose condition requires medical attention, should report such condition to the board of commissioners before calling in a physician. In an emergency, however, he may without previous authority from the board, procure necessary attention for his prisoner, and the board of commissioners will be liable for the reasonable charge for such services as may be rendered to the prisoner at the request of the sheriff. The authority of the sheriff to act in an emergency such as existed in this case must be sustained. *Miller v. Cornell*, 187 N. C., 550; *Perkins v. Wood & Coal Co.*, 189 N. C., 602.

There was error in sustaining the motion of the board of county commissioners of Duplin County for judgment of nonsuit. An issue should be submitted to the jury, in order that it may determine whether or

not the professional services rendered to, and the hospital expenses incurred in behalf of Peter Camel by plaintiff, were reasonably necessary in view of the condition of Peter Camel while in the custody of said sheriff. If the jury shall answer such issue in the affirmative, then plaintiff is entitled to recover of the board of county commissioners of Duplin County, the reasonable value of such services and expenses, to be determined by the jury in answer to an appropriate issue. There must be a new trial and to that end the judgment is

Reversed.