LUTHERAN MEDICAL CENTER OF OMAHA, NEBRASKA, A NEBRASKA NONPROFIT CORPORATION, APPELLEE, V. CITY OF OMAHA, A MUNICIPAL CORPORATION AND CITY OF THE METROPOLITAN CLASS, APPELLANT.

281 N. W. 2d 786

Filed August 7, 1979. No. 42193.

Herbert M. Fitle and Richard A. Cerveny, for appellant.

Andrew E. Grimm and John H. Cotton of Gaines Otis Mullen & Carta, for appellee.

Heard before BOSLAUGH, MCCOWN, BRODKEY, and HASTINGS, JJ., and FAHRNBRUCH, District Judge.

FAHRNBRUCH, District Judge.

Plaintiff, the Lutheran Medical Center of Omaha, a Nebraska nonprofit corporation, brought this ac-

tion against the defendant, the City of Omaha, a municipal corporation and city of the metropolitan class, for money due by reason of medical services rendered to (a) a city jail prisoner; and (b) a suspect in an armed robbery who was shot by an officer of the Omaha police division. The trial court entered judgment for the plaintiff and the defendant appeals. We affirm.

The case was tried to the trial court upon a stipulation of facts and the pleadings.

The city jail prisoner was stricken with severe chest pains while in jail and was taken by defendant's employee to plaintiff's hospital. The prisoner's condition was diagnosed as unstable angina requiring emergency medical treatment, and the prisoner was placed in the intensive care unit. He was dismissed from the hospital after approximately a week, but due to an intervening escape was not returned to jail.

In the case of the suspect, he was delivered to plaintiff's hospital for emergency treatment by defendant's employee. He had been shot by an officer of the Omaha police division while allegedly fleeing from the scene of an armed robbery. Dr. Richard B. Svehla treated the suspect for shock and performed exploratory abdominal surgery as the result of a gunshot wound to the lower back, closed three wounds of the jejunum, and removed the bullet causing the injury. The suspect was placed in intensive care, thereafter in a regular hospital room, and subsequently lodged in jail.

Dr. Svehla duly assigned his claim to plaintiff for services rendered. Proper claims were presented to the defendant and were rejected. Appeal was timely taken to the District Court for Douglas County, which reversed the decision of the city council and entered judgment for the plaintiff.

The parties stipulated that the medical services were necessary and that the charges were fair and

reasonable. Stipulated evidence established that the medical services rendered were of an emergency nature in each case.

Defendant claims it is not liable because (1) contracts entirely outside the powers delegated to a municipal corporation are void; (2) the mode of executing a contract with the defendant is a mandatory requirement which was not followed in either case; (3) the sole authority for binding the defendant is a contract by defendant's city council and mayor, which was not done in these cases; (4) where the services are not requested by the proper authority there can be no implied contract; (5) in the absence of some express provision of the law, the public is not liable to a physician or surgeon for services rendered prisoners, even though they are insolvent and unable to pay for such services themselves; and (6) liability, if any, upon the defendant for medical or surgical aid can be imposed only for those services rendered to a prisoner who is actually confined in jail at the time the services are rendered.

It appears that this is a case of first impression in this court in regard to liability for emergency medical services to prisoners. Counsel have cited no cases in this jurisdiction, and we find none that have dealt directly with the issues here raised. Cases in some jurisdictions tend to support defendant's position. Trinity Hospital Association v. City of Minot, 76 N. W. 2d 916 (N. D., 1956); King Cy. v. Seattle, 70 Wash. 2d 988, 425 P. 2d 887; Windham Community Memorial Hospital v. Willimantic, 166 Conn. 113, 348 A. 2d 651. Those cases rested on lack of express or implied contract and upon the lack of a statutorily imposed obligation on imprisoning authorities to provide medical attention to prisoners. Other jurisdictions have held the imprisoning governmental subdivisions liable. City of Tulsa v. Sisler, 285 P. 2d 422 (Okla., 1955); Spicer v. Williamson, 191 N. C. 487, 132 S. E. 291; Lamar v. The Board of

Commissioners of Pike County, 4 Ind. App. 191, 30 N. E. 912. Those cases rested upon the statutory obligation of the imprisoning authority to supply medical needs to prisoners. In the Spicer and Lamar cases, the formalities of governing body approval prior to rendering emergency medical treatment were not required.

The concept that an imprisoning authority has a legal obligation to supply medical services to prisoners is not of recent origin, nor was it originally based on statutes. At common law, it was stated: "The rule that where a person requests the performance of a service, and the request is complied with, and the service performed, there is an implied promise to pay for the services, does not apply where a person requests a physician to perform services for a patient, *unless the relation of that person to the patient is such as raises a legal obligation on his part to call in a physician and pay for the services*, or the circumstances are such as to show an intention on his part to pay for the services * * *." (Emphasis supplied.) Spicer v. Williamson, *supra*; 30 Cyc. 1597. This rule has been interpreted to apply to authorities operating jail facilities since they have the *legal obligation* to their prisoners to supply the prisoners' medical needs. Citing the common law, the Supreme Court of the United States has said: "* * * 'it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.' " Estelle v. Gamble, 429 U. S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251. In a forerunner to that case, a federal district court in an addendum held: "The following principles apply to convicted prisoners (and also to unconvicted prisoners, who generally have greater rights than convicted prisoners):

"(1) * * * Having custody of the prisoner's body and control of the prisoner's access to medical treatment, the prison authorities have a duty to provide

needed medical attention. * * * there is a *constitutional duty* to provide needed medical treatment to a prisoner * * *." (Emphasis supplied.) Ramsey v. Ciccone, 310 F. Supp. 600 (W. D. Mo., 1970).

The United States Supreme Court has held that intentional indifference to the medical needs of a prisoner is proscribed by the Eighth Amendment to the United States Constitution as being cruel and unusual punishment. Estelle v. Gamble, *supra*. While these two cases applied to prisoners in penitentiaries, there is no rational basis why the same principles should not apply to jail prisoners. Applying those principles, it can only be concluded that under the Eighth and Fourteenth Amendments to the United States Constitution, state governmental subdivisions operating jails have the legal obligation to supply needed medical treatment. In the cases cited by the defendant, courts considered only statutorily imposed duties or the lack thereof and did not consider the constitutional dimensions of the issue.

In Lamar v. The Board of Commissioners of Pike County, *supra*, the board of county commissioners was held liable for services rendered by a physician, at the request of a jailer, to a prisoner who suddenly became sick, notwithstanding a statute under which the board had elected a health officer whose duty it was to care for prisoners in the county jail. The court found that an emergency existed and the health officer was not readily available.

In Spicer v. Williamson, *supra*, the board of county commissioners contended it was not liable, for the reasons that it had not authorized the sheriff to request a hospital and a physician to perform medical services or incur the expenses for a prisoner, and that it was liable for medical services rendered only to prisoners confined in jail and not liable for such services to one who is in the custody of the sheriff, following an arrest, and who has not been committed to jail after a preliminary trial or upon con-

viction. In that case, the patient was shot by a deputy sheriff immediately before his arrest. When the patient came into the custody of the sheriff, his condition resulting from the wound required immediate medical and surgical treatment. The North Carolina Supreme Court held the county board of commissioners liable under those circumstances for the medical services rendered, stating: "In an emergency, however, he [the sheriff] may without previous authority from the board, procure necessary attention for his prisoner, and the board of commissioners will be liable for the reasonable charge for such services as may be rendered to the prisoner at the request of the sheriff." Admittedly, the court was relying upon the statutory duty or legal obligation of the board to supply medical attention to prisoners. In the case at bar, that legal obligation is supplied by the Eighth and Fourteenth Amendments to the United States Constitution. Estelle v. Gamble, 429 U. S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251.

In each of the two situations at bar (the prisoner in jail and the suspect who was shot), immediate emergency medical attention was required. Defendant's employees each acted responsibly in executing their respective duties to procure needed medical services. Had they not done so under all of the circumstances, the defendant and each employee could have been liable for intentionally denying or delaying access to medical care or deliberate indifference to serious medical needs of prisoners. Estelle v. Gamble, *supra*; Ramsey v. Ciccone, 310 F. Supp. 600 (W. D. Mo., 1970).

It matters not that the suspect was not in jail when he required emergency medical attention, particularly under the facts of this case. Inherent in the trial court's judgment was a finding that when he needed emergency medical attention the suspect was in police custody. Where the trial court is sit-

ting as trier of both the law and the facts and decides facts which are inherent in the judgment, such judgment has the effect of a jury verdict, and it will not be set aside on appeal unless clearly wrong. Hudson Foods, Inc. v. L & B Corp. & Estate of Clark, 202 Neb. 291, 275 N. W. 2d 70; Ineba Ranch v. Cockerill, 201 Neb. 592, 271 N. W. 2d 44. Here, it was the policeman's shot that felled the defendant. Two affidavits received in evidence by stipulation, with all objections waived, state that once the suspect was apprehended by officers of the Omaha police division, the suspect became a prisoner. The suspect was delivered to plaintiff by defendant's employee. After the suspect's injuries were treated, he was taken to jail. Under these circumstances a trier of fact could reasonably infer and conclude that a suspect was in the custody of the police at the time he needed medical attention. We cannot say that the trial court was clearly wrong.

The judgment of the trial court is affirmed.

AFFIRMED.