509 So.2d 1170 (1987)
METROPOLITAN DADE COUNTY, a Political Subdivision of the State of Florida, Appellant,
v.
P.L. DODGE FOUNDATIONS, INC., d/b/a Dodge Memorial Hospital, and Michael Murray and Deborah Murray, Appellees.
Nos. 85-2872, 85-2886 and 86-4.
District Court of Appeal of Florida, Third District.
June 23, 1987.
*1171 Robert A. Ginsburg, Co. Atty., and Shepard J. Nevel, Asst. Co. Atty., for appellant.
Dunn & Johnson, Stanley M. Newmark, Miami, for appellees.
Before HENDRY, NESBITT and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
This is an appeal by Metropolitan Dade County from a summary judgment in favor of P.L. Dodge Foundations, Inc., doing business as Dodge Memorial Hospital. The judgment determined that the County owed the hospital for medical care furnished to Michael Murray after Murray was transferred by court order to the hospital for psychiatric evaluation and treatment. We reverse the summary judgment in the hospital's favor and remand the cause to the trial court for further proceedings because we conclude that the hospital is not entitled to judgment against the County unless first it establishes, which it has not in the least, much less conclusively, that Murray has no insurance to cover such expenses and is unable to pay them from his own financial resources.

I.
On March 30, 1983, Michael Murray, a City of Hialeah police officer, was arrested on two counts of sexual battery and incarcerated in the Dade County Jail.[1] At the trial court's request, Murray was examined immediately at Jackson Memorial Hospital, the county facility, by the consultant psychiatrist of the City of Hialeah Police Department. The psychiatrist, finding Murray to be suffering from depression and suicidal, recommended that Murray be hospitalized for psychiatric care. At a hearing on the following day, the court, with the apparent consent of Murray's wife and his then attorney (Murray's personal friend), ordered that Murray be transferred from jail to Dodge Memorial Hospital  a facility recommended by the State because of its security  for the required evaluation and treatment. Although Murray wanted to be released from jail to return home, the record reflects that he was, by his own admission, "out of it" at the time and, according to others, incompetent and in need of the recommended treatment.
Three months and $35,703.50 in unpaid hospital bills later, Murray was returned from Dodge Memorial to the court where he, upon pleading guilty to the charges, was placed on probation with adjudication withheld.
Dodge Memorial sued Murray, Murray's wife,[2] Dade County (as the party responsible for ordering Murray's sojourn at the *1172 hospital), and, despite a contention that Murray had resigned from the force on the day he entered Dodge Memorial, the City of Hialeah (as Murray's alleged insurer under the City's major medical group policy for police officers). Dade County cross-claimed against the Murrays, the Murrays cross-claimed against Dade County and the City of Hialeah, and all parties moved for summary judgment. The trial court entered summary judgment in favor of Dodge Memorial against the County and, finding the Murrays entirely without liability under the circumstances for the medical services provided by the hospital, denied judgment on the County's claim against the Murrays and all claims against the City of Hialeah, Murray's alleged insurer. We have jurisdiction only over the County's appeal from the judgment for Dodge Memorial and dismiss all appeals and cross-appeals from that part of the judgment denying any party's motion for summary judgment. Aetna Casualty & Surety Co. v. Meyer, 385 So.2d 10 (Fla. 3d DCA 1980).
Conceding that it is obliged to provide medical treatment to its prisoners, Dade County contends, as it did below, that this obligation does not extinguish the prisoner's primary responsibility to pay for the cost of the treatment under a long-standing common law rule recently codified in Section 901.35, Florida Statutes (1983). Murray, the prisoner, responds that he is not liable for medical care which he neither requested nor voluntarily accepted; that his hospitalization and treatment were unnecessary; and that, capable of paying or not, he owes nothing to anyone. Dodge Memorial Hospital, disagreeing with Murray, suggests that the prisoner, if shown to be able to pay, will be liable to the County on the County's cross-claim against the prisoner, but simply maintains that it is the County that is primarily liable to the hospital.

II.
As a threshold matter, we must consider the question of whether Murray's status as a prisoner precludes him from being liable to pay the hospital for his medical care because, if it does, then the County's contention that Dodge Memorial must look first to Murray is moot.
A prisoner, like any ordinary citizen, may not forcibly be given medical treatment without his express or implied consent. See Blitch v. Buchanan, 100 Fla. 1242, 132 So. 474 (1931); Chambers v. Nottebaum, 96 So.2d 716 (Fla. 3d DCA 1957); 1975 Att'y Gen.Op. Fla. 75-28 (Feb. 12, 1975). However, the knowing and voluntary acceptance of the benefits of any service creates an implied promise on the part of the recipient to pay for them. Yeats v. Moody, 128 Fla. 658, 175 So. 719 (1937); Strano v. Carr & Carr, Inc., 97 Fla. 150, 119 So. 864 (1929); Taylor v. Thompson, 359 So.2d 14 (Fla. 1st DCA 1978); Tobin & Tobin Insurance Agency v. Zeskind, 315 So.2d 518 (Fla. 3d DCA 1975); Symon v. J. Rolfe Davis, Inc., 245 So.2d 278 (Fla. 4th DCA 1971). A prisoner-recipient is not excepted from this rule. Lutheran Medical Center v. Omaha, 204 Neb. 292, 281 N.W.2d 786 (1979). See infra page 1174. And, where one supplies services to a mentally impaired person, even though acting without his knowledge or consent, the supplier is entitled to restitution
"if he acted unofficiously and with intent to charge therefore, and the things or services were necessary to prevent the other from suffering serious bodily harm or pain, and the person supplying them had no reason to know that the other would not consent to receiving them, if mentally competent, and ... because of ... mental impairment, the other's consent would have been immaterial." Nursing Care Services v. Dobos, 380 So.2d 516, 518 (Fla. 4th DCA 1980) (quoting 66 Am.Jur.2d, Restitution and Implied Contract § 23).
Although Murray now disputes that there was an emergency which excused the hospital from obtaining his consent to *1173 treatment, see Tipper v. Great Lakes Chemical Co., 281 So.2d 10 (Fla. 1973); Nursing Care Services v. Dobos, 380 So.2d 516, and contends that his medical treatment was not reasonably necessary, he has not conclusively shown that there was no emergency and that treatment was not reasonably necessary so as to entitle him to relief from all responsibility by a summary judgment. Indeed, there is ample evidence in this record  including that a determination of the necessity for Murray's immediate treatment at Dodge Memorial was made by his wife and trusted attorney-friend  to show that there was an emergency and that treatment was reasonably necessary. Moreover, Murray has made no claim that he was prevented from terminating or unsuccessfully attempted to terminate his treatment during his three-month stay at Dodge Memorial. Thus, since Murray's status as a prisoner at the time he received treatment at Dodge Memorial does not, by itself, relieve him of liability to the hospital for the costs of his care,[3] and since he has not conclusively shown that there was no emergency and that treatment was not reasonably necessary, he remains a person who may be liable to the hospital for the payment of its bill. That being the case, we turn to the question of whether the hospital must show that it cannot recover payment from Murray before being entitled to recover from the County.

III.

A.
If the County is liable for the cost of Murray's medical care, regardless of whether Murray has insurance coverage or the ability to pay, then, quite obviously, the hospital need not show its inability to collect the debt as a predicate to its action against the County. Thus, we first must determine whether the County must pay for the medical care of a non-indigent prisoner.
The County concedes that it, as Murray's custodian, had the duty to provide medical care to its prisoner.[4] It reminds us, however, that the duty to provide medical care is not the same as the duty to pay for it. Silver Cross Hospital v. Boyden, 351 Ill. App. 283, 114 N.E.2d 898 (1953). Cf. State v. Byrd, 378 So.2d 1231 (Fla. 1979) (Section 939.15, Florida Statutes (1975), directing counties to pay all costs of an indigent defendant, does not establish right to have costs paid by government; the statute merely prescribes which governmental agency must pay indigent's court costs and does not foreclose cost recovery). See 1959 Att'y Gen.Op. Fla. 059-148 (July 31, 1959); 1974 Att'y Gen.Op. Fla. 074-72 (March 6, 1974); 1975 Att'y Gen.Op. Fla. 075-47 (Feb. 20, 1975); 1976 Att'y Gen.Op. Fla. 076-139 (June 18, 1976) (expressing the view, in a variety of contexts, that while a governmental agency must furnish and pay for medical care to indigent prisoners, those prisoners who are not indigent should be required to pay for their own care).[5]
Where no distinction is drawn between indigent and non-indigent prisoners  and where the condition of indigency is apparently assumed  the holding that a governmental body implicitly agrees to pay the *1174 hospital for any necessary and reasonable charges for prisoners admitted for emergency care, see Hospital Board of Directors v. Durkis, 426 So.2d 50 (Fla. 2d DCA 1982); see also Dade County v. Hospital Affiliates International, 378 So.2d 43 (Fla. 3d DCA 1979) (dictum to same effect), is hardly support for the proposition that the governmental body must pay for the non-indigent prisoner. Indeed, where, as in City of Plantation v. Humana, Inc., 429 So.2d 37 (Fla. 4th DCA 1983), the distinction between indigent and non-indigent prisoners is drawn, there emerges the quite different proposition that a governmental body is liable to make payment to the hospital only when the prisoner is shown to be indigent.
In Plantation, city police officers arrested an individual named Toth for a state offense and retained him in its custody at a city detention facility, presumably to await transfer to the Broward County sheriff. When Toth attempted suicide by hanging, the county medical service tended to him and arranged for his admission to Humana Hospital. Significantly, the city had "no control over the selection of the hospital nor did it participate in the admission of Toth... ." Id. at 38. Thus, unlike the usual case, there was no express or implied agreement by the city to pay which could be said to arise from the act of selecting or delivering a prisoner to the hospital.
But what of the city's undeniable duty to provide medical care for a person in its custody? Presumably the court was well aware that such a duty exists, yet despite its existence concluded the city had no duty to pay. We suggest that underlying this conclusion is the court's determination that fulfillment of the duty to provide does not, in itself, create a duty to pay and that, in order for a duty to pay to arise, it must first be established that the prisoner-patient is indigent.[6]
This result  that the governmental entity under a duty to provide prisoners with medical care is liable for the costs of that care only if the prisoner is unable to pay  is in accord with the few cases from other jurisdictions that have addressed this question.[7]
In Kansas, for example, it is well established that the county having custody of a prisoner is primarily liable for medical care expenses only if the prisoner is found to be indigent and no other source of funds is available; otherwise, the prisoner is liable. Dodge City Medical Center v. Board of County Commissioners, 6 Kan. App. 2d 731, 634 P.2d 163 (1981) (county's liability for medical care is primary where the prisoner is indigent and no other source of funds is available); Mt. Carmel Medical Center v. Board of County Commissioners, 1 Kan. App. 2d 374, 566 P.2d 384 (1977) (same). See Pfannenstiel v. Doerfler, 152 Kan. 479, 105 P.2d 886 (1940). Nebraska agrees that counties have a common law duty to pay for the medical costs of only *1175 those prisoners who are unable to pay for such services themselves. Lutheran Medical Center v. Omaha, 204 Neb. 292, 281 N.W.2d 786 (1979).

B.
Apparently believing  erroneously, in our view  that the court in City of Plantation v. Humana, Inc. had relieved the city of responsibility to pay for the medical care of an indigent in its custody,[8] the Legislature promptly sought to "correct" Plantation by enacting Section 901.35 Florida Statutes (1983).[9] But motive aside, it is clear that the Legislature's intent in passing Section 901.35 was to give express authority to hospitals and governmental agencies to do what they were entitled to do before Plantation (and, in our view, even after Plantation). Thus, both before and after the enactment of Section 901.35, proof of the prisoner's inability to pay was and is a requisite for the imposition of liability on a governmental entity for the medical care of a prisoner.
In concluding that proof of the prisoner's inability to pay is a sine qua non of the hospital's right to recover against the governmental body, we have not overlooked City of Fort Myers v. Hospital Board of Directors, 505 So.2d 590 (Fla. 2d DCA 1987). There, the court held that
"[a]bsent a showing that each patient here had insurance or could pay for his care or treatment, the hospital ... had the right to seek payment for the treatment and services it had provided from the law enforcement agency which had custody of the patient at the time of treatment." Id. at 591.
If the implication of this holding is, as we think it is, to make it a matter of affirmative defense for the governmental body to show the prisoner's ability to pay the hospital bill, then for the reasons already stated we disagree with it, believing it to be inconsistent not only with the common law proposition that the governmental body's duty to pay for a prisoner's medical care does *1176 not arise until it is first shown that the prisoner is unable to do so, but also with the edification of the common law found in Section 901.35, Florida Statutes (1983).[10],[11],[12]

IV.
Accordingly, the judgment under review is reversed and the cause remanded for further proceedings consistent with this opinion.
NOTES
[1] The complainants and alleged victims were Murray's wife and daughter. After Murray's arrest, Murray's wife requested the State to dismiss the charges. The State refused.
[2] The extension of the necessaries doctrine to hold wives liable for their husband's necessaries was recently rejected by the Florida Supreme Court in Shands Teaching Hospital & Clinics, Inc. v. Smith, 497 So.2d 644 (Fla. 1986) (disapproving Parkway General Hospital v. Stern, 400 So.2d 166 (Fla. 3d DCA 1981), and Manatee Convalescent Center v. McDonald, 392 So.2d 1356 (Fla. 2d DCA 1980)). See Wetjen v. Sarasota County Public Hospital Board, 506 So.2d 97 (Fla. 2d DCA 1987). In Shands, the court rejected the hospital's argument that it had standing to argue that the deceased husband was being denied equal protection under the law. None of the parties have addressed Shands' effect on the discrete issue of the wife's liability in the present case.
[3] Quite obviously, Murray, even if shown to be presently unable to pay, would not be relieved of liability to the hospital on that account.
[4] Under the United States Constitution, the underpinning of this duty is the due process clause of the Fourteenth Amendment, requiring "the responsible government or governmental agency to provide medical care to persons [in custody]" without regard to "how the cost of that care should be allocated as between the entity and the provider of the care." Revere v. Massachusetts General Hospital, 463 U.S. 239, 244-45, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605, 611 (1983). The Eighth Amendment's proscription against cruel and unusual punishment by "deliberate indifference to serious medical needs of prisoners" applies only to those adjudicated guilty, not pretrial detainees such as Murray. Id. Although providing medical care is constitutionally required, the United States Supreme Court has not addressed whether a "governmental entity may ... recover from a detainee the cost of the medical services provided to him." Id. at 245 n. 7, 103 S.Ct. at 2984 n. 7, 77 L.Ed.2d at 612 n. 7.
[5] To the extent that these opinions conclude that one governmental agency or another has a duty to pay, it must be noted that the opinions are in response to questions asking the Attorney General to determine the liability of one governmental agency vis-a-vis another, not vis-a-vis the prisoner. The question presented in Opinion 075-35  that is, whether a hospitalized prisoner could be personally billed for costs if he was covered by hospitalization insurance  went unanswered. Instead, the Attorney General merely recommended that, because the government's duty to provide care meant that the hospital was not restricted to looking "only to the prisoner's insurance policy or the prisoner for payment," 1975 Att'y Gen.Op. Fla. 075-35, at 57 (Feb. 17, 1975), the County should allocate appropriate funds for medical care of prisoners who for the most part cannot be expected to be solvent.
[6] The court alluded twice to the lack of any showing that Toth was indigent when it noted that Humana sought payment from the city "regardless of the indigence of the patient" and that "the Hospital did not file a claim in the estate of Toth to seek payment of its bill." Id. at 39.
[7] Most cases pertain only to cost allocation between the provider and the entity having custody of an indigent prisoner or between different governmental entities. See, e.g., City of Phoenix v. Superior Court, 139 Ariz. 175, 677 P.2d 1283 (1984) (arresting agency bears financial responsibility for prisoners); Wesley Medical Center v. Wichita, 237 Kan. 807, 703 P.2d 818 (1985) (county, not city, liable for services provided to indigent before being transferred to the county jail because prisoner arrested by city for state law violation); St. Barnabas Medical Center v. Essex County, 211 N.J. Super. 488, 511 A.2d 1287 (1986) (after agreeing to pay for prisoner's care, county could not unilaterally terminate obligation by suspending prisoner's sentence); Harrison Memorial Hospital v. Kitsap County, 103 Wash.2d 887, 700 P.2d 732 (1985) (allocation of medical costs between the governmental entity and the care provider).
[8] The Florida House Committee on Corrections, Probation & Parole, Final Bill Analysis of CS/HB 830 (Medical Expenses for Persons Injured During Arrest) (May 10, 1983); and Hearing on CS/HB 830 Before the Institutions Subcommittee of the Florida House Committee on Corrections, Probation & Parole (May 10, 1983); and Hearing on CS/HB 830 Before the Florida House Committee on Corrections, Probation & Parole (May 10, 1983) (tapes available from the Florida State Archives; series 414, box 350), show that Section 901.35 was enacted to "correct" the result in Plantation, which was viewed as contrary to previously existing law. While it is arguable that the nature of the charge under which a prisoner is being held should determine which among governmental entities should be responsible for the prisoner's needed medical care, we are not here concerned with a dispute between entities. Our sole concern is whether any governmental entity should be responsible to pay for the medical care of a prisoner who is able to pay for his own.
[9] Section 901.35, Florida Statutes, provides:

"(1) Notwithstanding any other provision of law, the responsibility for paying the expenses of medical care, treatment, hospitalization, and transportation for any person ill, wounded, or otherwise injured during or at the time of arrest for any violation of a state law or a county or municipal ordinance is the responsibility of the person receiving such care, treatment, hospitalization, and transportation. The provider of such services shall seek reimbursement for the expenses incurred in providing medical care, treatment, hospitalization, and transportation from the following sources in the following order:
"(a) From an insurance company, health care corporation, or other source, if the prisoner is covered by an insurance policy or subscribes to a health care corporation or other source for those expenses.
"(b) From the person receiving the medical care, treatment, hospitalization, or transportation.
"(2) Upon a showing that reimbursement from the sources listed in subsection (1) is not available, the costs of medical care, treatment, hospitalization, and transportation shall be paid:
"(a) From the general fund of the county in which the person was arrested, if the arrest was for violation of a state law or county ordinance; or
"(b) From the municipal general fund, if the arrest was for violation of a municipal ordinance.
"The responsibility for payment of such medical costs shall exist until such time as an arrested person is released from the custody of the arresting agency.
"(3) An arrested person who has health insurance, subscribes to a health care corporation, or receives health care benefits from any other source shall assign such benefits to the health care provider."
[10] The Fort Myers court notes that the result it reaches is consistent with that part of Section 901.35 allocating financial responsibility to the county or city depending on the charge against the defendant. Ironically, the court makes no mention of the fact that the result it reaches  that the governmental body has the burden to show the prisoner's ability to pay  is completely inconsistent with Section 901.35.
[11] Hospital Board of Directors v. Durkis, 426 So.2d 50, upon which the court relies in Fort Myers, is, as we have already said, a case that does not address whether the prisoner was indigent or non-indigent.
[12] There is no conflict between Section 901.35 and Section 951.032, Florida Statutes (1983), and Section 951.032 lends no support to the holding in Fort Myers. Section 951.032 provides:

"(1) A county detention facility or municipal detention facility incurring expenses for providing medical care, treatment, hospitalization, or transportation may seek reimbursement for the expenses incurred in the following order:
"(a) From the prisoner or person receiving medical care, treatment, hospitalization, or transportation.
"(b) From an insurance company, health care corporation, or other source if the prisoner or person is covered by an insurance policy or subscribes to a health care corporation or other source for those expenses.
"(2) A prisoner who receives medical care, treatment, hospitalization, or transportation shall cooperate with the county detention facility or municipal detention facility in seeking reimbursement under paragraph (1)(b) for expenses incurred by the facility for the prisoner. A prisoner who willfully refuses to cooperate with the reimbursement efforts of the detention facility may not receive gaintime as provided by s. 951.21."
Section 901.35 contemplates that the health care provider has not been paid and fixes the order in which the provider is to seek payment. Section 951.032 contemplates that the governmental body has paid the provider, for example, under an ongoing service contract, and fixes the order in which it is to seek reimbursement.