LUTHERAN MEDICAL CENTER, APPELLANT, V. CITY OF OMAHA,
APPELLEE.
429 N.W.2d 347

Filed September 16, 1988.    No. 87-033.

William Jay Riley and Nick R. Taylor, of Fitzgerald & Brown, for appellant.

Herbert M. Fitle, Omaha City Attorney, James E. Fellows, and Richard A. Cerveny for appellee.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and McGINN, D.J.

SHANAHAN, J.

Lutheran Medical Center of Omaha (LMC) appeals from a judgment for the City of Omaha, denying LMC's claims for payment of medical services rendered to persons in police custody who were brought to LMC for treatment. Previous litigation between LMC and the city supplies background for the present appeal.

Before this court decided *Lutheran Medical Center v. City of Omaha*, 204 Neb. 292, 281 N.W.2d 786 (1979) (*Lutheran I*), the city had refused to pay LMC for medical attention received by persons in police custody who were brought to LMC for

emergency treatment, namely, a prisoner with unstable angina while in the city's jail and a suspect with a gunshot wound inflicted by police at the scene of an armed robbery. The city rejected LMC's claims for payment. In affirming the judgment for LMC and in addressing the issue of the city's liability for medical treatment, this court stated in *Lutheran I*:

> The concept that an imprisoning authority has a legal obligation to supply medical services to prisoners is not of recent origin, nor was it originally based on statutes. At common law, it was stated: "The rule that where a person requests the performance of a service, and the request is complied with, and the service performed, there is an implied promise to pay for the services, does not apply where a person requests a physician to perform services for a patient, *unless the relation of that person to the patient is such as raises a legal obligation on his part to call in a physician and pay for the services,* or the circumstances are such as to show an intention on his part to pay for the services . . . ."

(Emphasis in original.) *Id.* at 295, 281 N.W.2d at 788 (quoting from *Spicer v. Williamson*, 191 N.C. 487, 132 S.E. 291 (1926)).

In *Lutheran I*, the court continued at 296, 281 N.W.2d at 789:

> The United States Supreme Court has held that intentional indifference to the medical needs of a prisoner is proscribed by the Eighth Amendment to the United States Constitution as being cruel and unusual punishment. . . . [I]t can only be concluded that under the Eighth and Fourteenth Amendments to the United States Constitution, state governmental subdivisions operating jails have the legal obligation to supply needed medical treatment.

It further stated:

> In each of the two situations at bar (the prisoner in jail and the suspect who was shot), immediate emergency medical attention was required. Defendant's employees each acted responsibly in executing their respective duties to procure needed medical services. Had they not done so under all of the circumstances, the defendant and each employee could have been liable for intentionally denying

or delaying access to medical care or deliberate indifference to serious medical needs of prisoners. [Citations omitted.]

It matters not that the suspect was not in jail when he required emergency medical attention . . . .

*Id.* at 297, 281 N.W.2d at 789.

Therefore, as this court ruled in *Lutheran I,* a city has (1) a constitutional obligation, as a part of due process, to provide medical attention to persons in custody and (2) the common-law liability to pay for medical treatment required by a person in police custody, such as a suspect wounded by police in the process of apprehending the suspect and such other persons needing necessary medical care while in custody.

After *Lutheran I* and during the period of May 1981 to May 1983, the city paid LMC for emergency medical care received by indigents in police custody.

In the interim, however, the Supreme Judicial Court of Massachusetts decided *Massachusetts General Hospital v. Revere,* 385 Mass. 772, 434 N.E.2d 185 (1982), which involved the hospital's claim against the city for medical services rendered to a burglary suspect named Kivlin, who was brought by the city's police to the hospital because the police had shot and wounded Kivlin as he fled the burglary scene. In its suit to recover for Kivlin's bill, the hospital based its claim on contractual and constitutional grounds, but the trial court entered summary judgment for the city. On appeal, the Supreme Judicial Court of Massachusetts held that, under existing Massachusetts law, the hospital had no basis for recovery on contract, express or implied (quantum meruit). However, the court then held that, as a result of the eighth amendment to the U.S. Constitution, "prohibition against deliberate indifference to the medical needs of prisoners . . . compels a government agency or division responsible for supplying those medical needs to pay for them." *Id.* at 776, 434 N.E.2d at 187-88. As authority for its foregoing conclusion concerning a constitutional liability for payment, the Massachusetts court cited, among other authorities, this court's decision in *Lutheran I.* The Supreme Judicial Court of Massachusetts then remanded the matter to the trial court with

direction to enter judgment against the city, requiring that the city, on the basis of the eighth amendment to the U.S. Constitution, pay for the hospital's services rendered to Kivlin in connection with the gunshot wound.

After certiorari, the U.S. Supreme Court, on June 27, 1983, decided *Revere v. Massachusetts General Hospital*, 463 U.S. 239, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983). In recognizing Revere's constitutional duty to obtain medical care for Kivlin and others in police custody, the U.S. Supreme Court stated:

> The Due Process Clause, however, does require the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police. In fact, the due process rights of a person in Kivlin's situation are at least as great as the Eighth Amendment protections available to a convicted prisoner. . . . We need not define, in this case, Revere's due process obligation to pretrial detainees or to other persons in its care who require medical attention. See *Youngberg v. Romeo*, 457 U. S. 307, 312, n. 11 (1982); *Norris v. Frame*, 585 F. 2d 1183, 1187 (CA3 1978); *Loe v. Armistead*, 582 F. 2d 1291 (CA4 1978), cert. denied *sub nom. Moffitt v. Loe*, 446 U. S. 928 (1980). Whatever the standard may be, Revere fulfilled its constitutional obligation by seeing that Kivlin was taken promptly to a hospital that provided the treatment necessary for his injury. And as long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. That is a matter of state law.
>
> If, of course, the governmental entity can obtain the medical care needed for a detainee only by paying for it, then it must pay. . . .
>
> In short, the injured detainee's constitutional right is to receive the needed medical treatment; how the city of Revere obtains such treatment is not a federal constitutional question.

463 U.S. at 244-46.

Thus, in *Revere*, the U.S. Supreme Court recognized a state

government's due process duty to provide medical care for injured persons or those otherwise needing medical treatment while such persons are in police custody. However, the *Revere* Court left to state law the determination of liability concerning payment for the medical services rendered to those in police custody, that is, "[T]he Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. That is a matter of state law." 463 U.S. at 245. Therefore, the *Revere* Court, while recognizing a city's or government's due process duty to supply medical attention for those in police custody, reversed the Massachusetts court's judgment that the eighth amendment to the U.S. Constitution obligated the city to pay for that medical attention.

As the result of *Revere*, the U.S. Supreme Court has concurred with the conclusion reached by this court in *Lutheran I* concerning the due process duty of a city, as a form of state government, to provide medical attention to persons in police custody. Although antedating *Revere*, this court's decision in *Lutheran I* also contained a principle of Nebraska common law, namely, a city has common-law liability to pay for medical treatment required by a person in police custody, such as a suspect wounded by police in the process of apprehending the suspect and such as other persons needing necessary medical care while in custody.

After the *Revere* decision, Omaha police continued to bring custodial individuals to LMC for medical services, as required by the 8th and 14th amendments to the U.S. Constitution, and further required by the State of Nebraska's "Standards for Jail Facilities," which in part provided:

It is the policy of the state of Nebraska that all jail facilities shall provide all inmates with a healthful environment and access to adequate medical care. All jail facilities shall provide access to medical services and maintain levels of sanitation and personal hygiene which are consistent with the Standards established herein.

. . . .

No person other than licensed physicians shall diagnose any illness or injury, give treatment, or prescribe medication, except that in emergencies a qualified person

may administer first-aid as expeditiously as possible pending the arrival or delivery of professional health care services.

Neb. Admin. Code tit. 81, ch. 10, §§ 001 and 002.01 (1984).

Relying on the city's past payments for medical services to custodial indigents, LMC provided 242 indigent individuals with hospital and medical services while those individuals were in police custody. On August 22, 1983, and January 18, 1984, LMC filed claims with the city for payment concerning the indigent individuals brought by police to the hospital. The fair and reasonable charge for such necessary hospital and medical services was $33,765.19.

On February 22, 1984, almost 8 months after the decision in *Revere v. Massachusetts General Hospital*, 463 U.S. 239, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983), and some 6 months after LMC's first claim had been filed, the city's attorney notified LMC that, based on *Revere*, the city "is no longer obliged" to pay medical expenses of persons in police custody inasmuch as "the issue of responsibility for payments of medical expenses was resolved in favor of the City of Revere" and that the city, therefore, denied LMC's claims. Subsequently, LMC's claims were presented to the Omaha city council, which denied the claims on May 15, 1984. On appeal to the district court, LMC sought a money judgment, interest, both before and after judgment, and any other relief and costs to which LMC was entitled. In its answer, the city maintained it had no constitutional, statutory, or common-law duty to pay for LMC's services. After a trial with facts as previously stated in this opinion, the district court found for the city and dismissed LMC's petition.

LMC assigns numerous errors. However, this appeal is resolved by our answer to the question: Does the city have a common-law obligation to pay LMC under the circumstances?

In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. However, regarding a question of law, the Supreme Court has an obligation to reach its conclusion independent from the conclusion reached by the trial court. *Wibbels v. Unick, ante* p. 184, 426 N.W.2d 244 (1988); *McKinstry v.*

*County of Cass*, 228 Neb. 733, 424 N.W.2d 322 (1988).

The city believes that *Revere* somehow alters this court's conclusions reached in *Lutheran I*. According to the city,

> Our Supreme Court correctly applied the Fourteenth Amendment as the constitutional provision imposing a legal responsibility upon the City to provide medical care when required, but erroneously applied the Eighth Amendment as the basis for requiring the City to provide such care.
>
> Neither Amendment, as stated in *Revere*, dictates how the cost of that care should be paid. Our Supreme Court, clearly in error, concluded that the Amendments placed an obligation upon the City of Omaha to pay for the medical care rendered.

Brief for appellee at 10-11.

The city then states: "The Appellee does not disagree now nor has it ever disagreed in this lawsuit that it is obliged to obtain medical attention for a person whether that person is in custody due to an adjudication of guilt or a detainee . . . ." Brief for appellee at 18.

The city then concludes:

> [W]hen Lutheran I was decided by our Supreme Court, it was a case of first impression and it did not have the holding of the *Revere* case to guide it in making its decision. Now that the *Revere* case has been decided, it appears that our Supreme Court erroneously applied the Eighth and Fourteenth Amendments to the U.S. Constitution to impose a duty to pay upon the City of Omaha in that case. The *Revere* case clearly holds that the U.S. Constitution does not dictate how the cost of the medical care should be allocated as between the governmental entity and the provider of the care, but that that should be determined as a matter of state law.

Brief for appellee at 19.

From the foregoing excerpts from the city's brief, we gather that the city is somewhat dissatisfied with *Lutheran I* and, relying on *Revere v. Massachusetts General Hospital*, 463 U.S. 239, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983), wants this court to overrule *Lutheran I*, which the city believes is inconsistent with

and diametrically opposed to *Revere*.

However, *Revere* is consistent with the principles which this court applied in *Lutheran I* under the 14th amendment and the common law of Nebraska. Specifically, in *Lutheran I*, we determined that allocation for the payment of medical expenses for custodial individuals is the city's liability as the result of the common-law implied contractual duty to pay such expenses. Thus, in *Lutheran I*, this court determined that the city was liable for payment to LMC on the basis of common law, not constitutional law. *Revere* in no wise affected the city's common-law liability, which was determined in and by *Lutheran I*; rather, *Revere* merely buttresses the conclusion reached in *Lutheran I*, that is, the city's liability for payment to LMC is a "matter of state law." *Revere*, 463 U.S. at 245. Quite obviously, our interpretation of *Revere* differs from that expressed by the city attorney in his letter to LMC. Again, according to *Revere*, a government, including a city, has the constitutional obligation, as part of due process, to provide or supply medical attention to those in police custody, but liability to pay for that medical attention is determined by state law, which, as far as the present appeal is concerned, was enunciated in *Lutheran I*. The constitutional obligation to provide medical attention is markedly distinct from the common-law liability to pay for medical attention, a distinction and conclusion made and clearly expressed in *Lutheran I*. Our interpretation of *Revere* is in accord with other state jurisdictions construing *Revere*; for example, see, *Harrison Mem. Hosp. v. Kitsap County*, 103 Wash. 2d 887, 700 P.2d 732 (1985); *Smith v. Linn County*, 342 N.W.2d 861 (Iowa 1984). Consequently, we reject the city's contention that *Revere* alters, overrules, or necessitates overruling the conclusions and principles expressed in *Lutheran I*. Lest the city remain in doubt, we conclude and reaffirm that the following is still the law in Nebraska: A city has (1) a constitutional obligation, as a part of due process, to provide medical attention to persons in police custody and (2) the common-law liability to pay for medical treatment required by a person in police custody, such as a suspect wounded by police in the process of apprehending the suspect and such other persons needing necessary medical care while in custody.

Under the circumstances, the district court's judgment for the city is clearly erroneous and is, therefore, reversed. This matter is remanded to the district court with direction to enter judgment in favor of LMC for $33,765.19, the amount stipulated as the fair and reasonable charge for the services rendered by LMC.

Prejudgment interest is allowed where the amount of the claim is liquidated. When reasonable controversy exists concerning the claimant's right to recover or the amount of such recovery, the claim is unliquidated, and prejudgment interest is not allowed. *Graff v. Burnett*, 226 Neb. 710, 414 N.W.2d 271 (1987); *Fee v. Fee*, 223 Neb. 128, 388 N.W.2d 122 (1986). The factual basis and amount of LMC's combined claims were stipulated and, therefore, are undisputed. In view of *Lutheran I*, a reasonable controversy did not exist concerning the right of LMC to recover on its claims for medical services rendered to those in custody of the city's police. Hence, the claim was liquidated. Prejudgment interest is allowable. On remand, the district court, as part of its judgment, shall award prejudgment interest to LMC from the date on which the Omaha city council denied LMC's claims for services rendered, namely, prejudgment interest from May 15, 1984, until entry of judgment on remand, with interest thereafter as provided by law concerning a money judgment.

LMC has requested an attorney fee for the services of its lawyers. Neb. Rev. Stat. § 25-824(2) (Cum. Supp. 1988), which became effective on August 30, 1987, during pendency of this appeal, authorizes and requires that the court in which an action is commenced or an appellate court

shall award as part of its judgment and in addition to any other costs otherwise assessed reasonable attorney's fees and court costs against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith.

Section 25-824(5) states that "[n]o attorney's fees or costs shall be assessed if a claim or defense was asserted by an attorney or party in a good faith attempt to establish a new theory of law in this state . . . ."

Neb. Rev. Stat. § 25-824.01 (Cum. Supp. 1988) provides:

In determining the amount of a cost or an attorney's fee award pursuant to subsection (2) of section 25-824, the court shall exercise its sound discretion. When granting an award of costs and attorney's fees, the court shall specifically set forth the reasons for such award and shall, in determining whether to assess attorney's fees and costs and the amount to be assessed against offending attorneys and parties, consider the following factors, including, but not limited to: [here the statute sets out certain factors to be considered in determining whether to assess an attorney fee].

In *Shanks v. Johnson Abstract & Title*, 225 Neb. 649, 407 N.W.2d 743 (1987), we considered the application of § 25-824 (Reissue 1985), the immediate predecessor of § 25-824 (Cum. Supp. 1988), which allowed an attorney fee in a situation where a litigant's allegation or denial was frivolous. In her amended petition in an action to recover a commission which Shanks, as seller, had paid to her real estate broker, Shanks reiterated the previous allegations of her petition, to which a demurrer had been sustained, but added an allegation that the purchasers did not complete the real estate transaction by " 'closing title in accordance with the provisions of the contract.' " 225 Neb. at 655, 407 N.W.2d at 746. At the time Shanks amended her petition, Nebraska law was undecided concerning the precise point or time at which a real estate "closing" took place. Summary judgment was granted to the broker; the district court awarded an attorney fee to the broker because Shanks' amended petition was made in bad faith; and Shanks appealed. We affirmed the summary judgment for the broker on the issue concerning the commission, but reversed the judgment awarding an attorney fee to the broker under § 25-824 (Reissue 1985), concluding that Shanks' allegation about the "closing," a previously undetermined question in Nebraska, removed Shanks' pleading from the characterization as "frivolous" or "bad faith." We noted that the word "frivolous" connotes an improper motive or a legal position wholly without merit.

The Supreme Court of Colorado, in *Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063 (Colo. 1984), construed the

following Colorado statute: " 'The court shall not award attorney fees among the parties unless it finds that the bringing, maintaining, or defense of the action against the party entitled to such award was frivolous or groundless. . . .' " (Emphasis omitted.) *Id.* at 1066. Another Colorado statute supplied factors which a court must consider in awarding an attorney fee, much the same as the factors contained in the Nebraska statute, § 25-824.01. In *Western United Realty, supra,* under Colorado law existing when Isaacs brought suit against their realtor, there was no cause of action for negligent misrepresentation. Nevertheless, for their cause of action against the realtor, Isaacs alleged the realtor's negligent misrepresentation. The trial court informed Isaacs that no such cause of action existed under Colorado law and that, if evidence at trial coincided with the evidence discussed at a pretrial conference, the court would be disposed to dismiss Isaacs' action. At trial, the court granted the realtor's motion for a directed verdict and awarded the realtor an attorney fee when Isaacs' evidence failed to establish deceit or negligent misrepresentation by the realtor.

On appeal, in *Western United Realty, supra,* Isaacs contended that "they were attempting to explore at trial the 'gray areas' of a relatively new theory of liability, negligent misrepresentation." 679 P.2d at 1069. In concluding that a court-assessed attorney fee was not warranted under the circumstances, the court considered various cases characterizing *frivolous* as " 'of little weight or importance having no basis in law or fact,' " *id.* at 1067; without "rational argument based on the evidence or law in support of a proponent's claim or defense," *id.* at 1067-68; " 'trifling or silly,' " *id.* at 1068; and "no realistic chance of success on merits," *id.* The Colorado court then stated at 1069:

> A claim or defense is frivolous if the proponent can present no rational argument based on the evidence or law in support of that claim or defense . . . but does not apply to meritorious actions that prove unsuccessful, legitimate attempts to establish a new theory of law, or good-faith efforts to extend, modify, or reverse existing law.

It concluded:

Under the circumstances, we are satisfied that the Isaacs' decision to maintain the action beyond the pretrial conference was not frivolous, groundless, or indicative of bad faith. Their claim became weaker as the litigation continued and ultimately proved unsuccessful, but, given the factual setting and the newly recognized theory of liability, we conclude that the conduct at issue here does not call for the award of attorney fees . . . .

*Id*. at 1070.

The court in *Western United Realty, supra*, then affirmed the decision of the intermediate court of appeals, which had held that Isaacs' claim had presented a justiciable issue and that the trial court had abused its discretion in assessing an attorney fee against Isaacs.

In the present case, the city, throughout the proceedings, has maintained that *Revere v. Massachusetts General Hospital*, 463 U.S. 239, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983), controls the issue of the city's liability to pay for medical attention rendered by LMC, notwithstanding our decision in *Lutheran I*. As we have pointed out and emphasized, *Revere* did not in any respect alter or necessitate further consideration of our holding in *Lutheran I*. In *Revere*, the U.S. Supreme Court simply concurred with this court in recognizing a city's due process duty for medical attention to those in police custody.

The city has failed to point out any decision from this court, after *Lutheran I*, which indicates a departure from the principles enunciated in *Lutheran I*, or a precedential inconsistency between *Lutheran I* and any other case which may be controlling in Nebraska. The city does not defend against LMC's action by attempting to establish a new theory of law as a defense inasmuch as *Revere*, on which the city doggedly relies, affords no new basis or theory as a defense to LMC's claims. The excerpts from the city's brief, previously quoted in this opinion, graphically and unambiguously demonstrate that the city's defense is nothing more than a misinterpretation of *Revere* and evasion of our statement of the common law concerning the city's heretofore determined liability for payment of LMC's charges under the circumstances.

In relation to *Lutheran I*, the parties are the same. The facts

involved in the present appeal are legally indistinguishable from the facts presented in *Lutheran I* and are undisputed. The law existing as the result of *Lutheran I* is still the law, both constitutional and common. The issue, whether the city is liable for payment, is the same. The city does not question the validity of the common law enunciated by this court in *Lutheran I* or seek to modify or reverse *Lutheran I* as an expression of Nebraska law governing the city's liability for payment. Thus, the city's defense demonstrates disdain for common law and common sense, notwithstanding the constancy of governing law since *Lutheran I*. The only newness injected into this appeal is the city's misinterpretation of *Revere* and the city's corresponding defense which finds no rational support in *Revere* or cogent argument founded on *Revere*.

Both *Shanks v. Johnson Abstract & Title*, 225 Neb. 649, 407 N.W.2d 743 (1987), and *Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063 (Colo. 1984), characterize as "frivolous" a legal position wholly without merit, that is, without rational argument based on law and evidence to support a litigant's position in the lawsuit. Consequently, the city's defense is without rational argument based on law or fact. The city's defense to LMC's action was, in a word, frivolous. As authorized by § 25-824 (Cum. Supp. 1988) and after consideration of the factors set forth in § 25-824.01, we, therefore, as a part of the costs of this appeal, tax to the City of Omaha an attorney fee in the amount of $3,000 for the services of LMC's lawyers in this court.

Also, in view of our determination and the provision for an attorney fee authorized by § 25-824, on remand the district court shall proceed to determine an attorney fee for the services of LMC's attorney in the district court. Such attorney fee, when determined, shall be included in the costs taxed to the City of Omaha in the proceedings before the district court.

REVERSED AND REMANDED WITH DIRECTION.