THOMAS R. PETERSON, APPELLEE AND CROSS-APPELLANT, V. DON PETERSON & ASSOCIATES INSURANCE AGENCY, INC., APPELLANT AND CROSS-APPELLEE.

452 N.W.2d 517

Filed March 9, 1990.    No. 88-020.

Charles H. Wagner, of Edstrom, Bromm, Lindahl & Wagner, for appellant.

Nicholas J. Lamme, of Yost, Schafersman, Yost, Lamme, Hillis & Mitchell, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

The defendant, Don Peterson & Associates Insurance Agency, Inc. (hereinafter referred to as the Agency), appeals from the district court's granting of partial summary judgment and subsequent summary judgment in favor of the plaintiff, Thomas R. Peterson, a former employee of the Agency, in his action for breach of a contract.

The plaintiff filed a petition in district court on July 22, 1987, for recovery of $27,000, which represented the balance due under a "Termination Agreement and Sale of Stock of [the Agency]" entered into between the parties on February 27, 1987, and for prejudgment interest. The Agency answered, alleging that its obligation to repurchase plaintiff's stock in the Agency terminated under a provision of a "Stock Redemption Agreement" between the parties, executed August 30, 1986. The stock redemption agreement relieved the defendant of payment for the stock if the plaintiff violated the covenant not to compete contained in the stock redemption agreement.

Plaintiff then filed a motion for partial summary judgment "on the issue of the enforceability of the covenant not to compete contained in the STOCK REDEMPTION AGREEMENT dated August 30, 1986, between Plaintiff and Defendant." After a hearing, the court ruled that the covenant "is unreasonable and unenforceable as a matter of law."

Plaintiff then filed a motion for summary judgment "in the principal sum of $27,000 which is the amount due on the Termination Agreement . . . together with prejudgment interest," and also filed a motion for attorney fees, alleging that the Agency's defense to payment was frivolous. The Agency then moved for leave to amend its answer to pray for "rescission of the contract" on the grounds that the court had "declared a portion of the agreement between the parties invalid," thus resulting in a failure of consideration. The Agency also sought leave "to file a Counter-Claim to request injunctive relief and for a return of proceeds already paid under the contract . . . ." The record does not show that this Agency motion was ever noticed for hearing.

On December 4, 1987, the court sustained plaintiff's motion for summary judgment upon finding that "there [was] no evidence to substantiate the Defendant's allegation that the Plaintiff violated the non-compete clause of the parties' agreement; that there is no genuine issue of material fact"; and that plaintiff was entitled to a judgment of $27,000 plus interest. The court overruled plaintiff's request for attorney fees, and the record is silent on the disposition of the Agency's motion for leave to amend.

In this court, the Agency assigns two errors, alleging that the district court erred (1) in sustaining plaintiff's motion for partial summary judgment upon finding that the covenant not to compete was unenforceable as a matter of law and (2) in sustaining plaintiff's motion for summary judgment upon finding that under the evidence presented, $27,000 was due under the termination agreement. The plaintiff has cross-appealed, assigning error in the trial court's action in failing to find that the defense was frivolous, thereby entitling the plaintiff to attorney fees under Neb. Rev. Stat. §§ 25-824 and 25-824.01 (Reissue 1989). We affirm as to the Agency's appeal and reverse as to plaintiff's cross-appeal.

The facts of this case are not in dispute. The plaintiff was employed as an insurance agent for the Agency between 1983 and 1987 and was a stockholder of the Agency. Plaintiff's "book of business," which he brought to the Agency, resulted in approximately $60,000 in commissions annually. On August

30, 1986, the parties entered into a contract entitled "Stock Redemption Agreement," which provided in part:

> In the event that a stockholder . . . leaves the employ of the company, or is terminated by the company, he shall be required to sell his stock, and the company shall be required to buy the same . . . . If the non-compete clause contained in the following paragraph hereof is violated or challenged, neither the company nor the other stockholder shall have any obligation to repurchase the stock if it has not been purchased, or to make any further payments for the stock if it has already been purchased.

The stock redemption agreement also contained a clause setting out a covenant not to compete proscribing former employees from engaging in or being concerned with

> any duties or pursuits whatever which would tend to compete either directly or indirectly with the company within a twenty-five mile radius of the city limits of Fremont, Hooper, or Wahoo, Nebraska, or any other town or city in which the company maintains at the time of termination of employment an insurance office, or with the company's established customers wherever located, for a period of three years from the time their employment by the company terminates.

At the time of the termination of plaintiff's employment, the Agency had offices in Fremont, Wahoo, Lincoln, and Elkhorn, Nebraska, and "an association with offices in Tekamah, West Point and Hooper." A substantial part of eastern Nebraska was within the description in the agreement.

On February 27, 1987, the parties executed a document entitled "Termination Agreement and Sale of Stock of Don Peterson and Associates Insurance Agency, Inc." Under that agreement, the Agency repurchased plaintiff's 20 shares of stock in the Agency corporation for the sum of $35,520, payable $5,520 down on April 1 plus $1,500 per month beginning May 1, 1987, until the sum due was fully paid. In consideration for the Agency's repurchase of stock, the agreement provided for plaintiff to place his stock in escrow with a named bank and to submit his resignation, effective February 28, 1987. This agreement also specifically provided:

"This Agreement contains the entire agreement of the parties . . . ."

The Agency made the required downpayment and the first two monthly installments, due May 1 and June 1, 1987, but stopped making payments thereafter. Although plaintiff sent the Agency a letter demanding payment and warning the Agency of plaintiff's right to invoke the acceleration remedy in the termination agreement, the Agency refused to make payment, stating that plaintiff had violated the covenant not to compete under the stock redemption agreement and that plaintiff's actions entitled the Agency to withhold payment. The Agency alleged in its answer that after plaintiff resigned, he caused some of the Agency's clients to transfer their business to Fremont State insurance, a competing agency located in the same building as plaintiff's present employer.

The record shows that after the plaintiff left his employment with the Agency, he eventually went to work for Coldwell Banker in Fremont, where he worked solely as a real estate sales associate. He had no duties or responsibilities as an insurance agent. Coldwell Banker, a real estate company, and Fremont State, an insurance agency, share a common location in Fremont, but the two operate independently in their respective fields. There is some degree of common ownership between Coldwell Banker and Fremont State, but the evidence shows they are separate corporations, with no intermingling of personnel other than the sharing of a receptionist. In a signed affidavit, the president of Fremont State, Thomas O. Patton, stated that the plaintiff had not discussed insurance matters with him while employed with Coldwell Banker. In addition, at least 10 clients who had transferred insurance from the Agency after the plaintiff resigned from employment with the Agency provided affidavits stating they had not been contacted by, solicited by, or urged by the plaintiff to move their insurance.

At the hearing on the motion for summary judgment, the depositions of the president and vice president of the Agency were submitted, as well as several affidavits in behalf of plaintiff. Insofar as evidence concerning plaintiff's alleged actions that the Agency said constituted a breach of the noncompete agreement, such evidence was virtually

nonexistent. Evidence on the Agency's behalf was of the nature of opinion evidence expressed by the Agency's president, who testified: "[T]he mere presence of [plaintiff] over there [at the building of Coldwell Banker and Fremont State] and the fact that he left, these clients left, went over there, I guess led me to believe that information was being exchanged."

The president further testified that he had observed plaintiff driving around Fremont with the manager of the Fremont State insurance agency. With regard to that incident, the president testified: "I don't know if they're making calculations or what they're doing. But, obviously they're exchanging some information when they're driving around. Ah, now, Tom — Maybe they're not. But, I assume they're there exchanging information."

In short, defendant did not present any concrete evidence as to any noncompete violations. The deposition testimony of plaintiff denied any competition in the insurance field. The affidavits filed supported that testimony.

Summary judgment is proper when the pleadings, depositions, and admissions on file, together with affidavits, show there is no genuine issue as to any material fact or as to the ultimate inferences which may be drawn from the material facts, and the moving party is entitled to judgment as a matter of law. *John v. OO (Infinity) S Development Co., ante* p. 190, 450 N.W.2d 199 (1990). " '[I]n appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.' " *OO (Infinity) S Development Co., supra* at 192, 450 N.W.2d at 201.

"A party moving for summary judgment has the burden of showing that no genuine issue as to any material fact exists. Thereafter, the burden of producing contrary evidence shifts to the party opposing the motion." *West Town Homeowners Assn. v. Schneider*, 231 Neb. 100, 104, 435 N.W.2d 645, 648 (1989).

Plaintiff's evidence at both the partial summary judgment hearing and the summary judgment hearing established clearly the existence of all facts necessary to enable a summary

judgment to be granted to him. The only evidence the Agency offered established that plaintiff works for a real estate agency located in the same building as another insurance company and that three or four of defendant's former clients transferred their business to that agency. Having no direct evidence in support of the defense that plaintiff violated the covenant not to compete, the Agency nevertheless contends that strong circumstantial evidence considered in the light most favorable to the Agency makes summary judgment improper. Considering the evidence submitted in a light most favorable to the Agency, no court could reasonably infer that plaintiff engaged in competition. The trial court properly found there was no evidence to support a defense that plaintiff violated a covenant not to compete.

In ruling on the plaintiff's motion for partial summary judgment, the court determined as a matter of law that the "covenant is unreasonable and unenforceable." In ruling on plaintiff's later motion for summary judgment, the trial court held there was "no evidence to substantiate the Defendant's allegation that the Plaintiff violated the non-compete clause," which the court had determined earlier was unenforceable.

We have no difficulty at all in determining that the trial court was correct in each of these holdings. Ordinarily, we will dispose of a case on appeal on the theory on which it was presented in the trial court. *Grone v. Lincoln Mut. Life Ins. Co.*, 230 Neb. 144, 430 N.W.2d 507 (1988). The Agency's defense, as above set out, is without any merit.

Nonetheless, we must expand our review because of the Agency's allegations argued under its general assignment of error that the trial court erred in granting summary judgment to plaintiff. The Agency contends that since the trial court declared the noncompete provision unenforceable, the consideration for the stock redemption agreement fails, and the Agency is entitled to rescission.

The short answer to the Agency's contention in this regard is that the Agency is talking about the wrong contract. The "Termination Agreement and Sale of Stock" was executed approximately 6 months after the stock redemption agreement. The termination agreement set out specific sums, which both parties agreed to, due for plaintiff's stock. The termination

agreement also changed the payment terms of the earlier stock agreement; provided that plaintiff place his stock in escrow with a bank; provided for the payment of plaintiff's salary and expenses through February 1987; provided that plaintiff resign as an employee, officer, and director of the Agency; and provided for certain treatment for bad debts arising out of accounts receivable. In short, plaintiff and the Agency entered into a whole new agreement about their business relations with one another, and this new agreement provided, in part: "This Agreement contains the entire agreement of the parties and no modification, amendment or change of any term or provision of this agreement shall be valid or binding unless the same is in writing . . . ."

Plaintiff has complied with all the terms of the termination agreement. There is ample consideration, running to both parties, in connection with that agreement.

Defendant has not shown any dispute as to any material fact. The entry of summary judgment in favor of plaintiff was proper and is affirmed.

The plaintiff contends in his cross-appeal that the court erred in overruling plaintiff's motion for attorney fees pursuant to §§ 25-824 and 25-824.01. Essentially, plaintiff contends that once

> the Court sustained the Plaintiff's Motion for Partial Summary Judgment on the ground that the Plaintiff had not violated the non-competition clause and further that the non-competition clause was unreasonable and unenforceable as a matter of law, the Defendant had no legitimate defense as to Plaintiff's action for the 27,000.00.

Brief for appellee at 37. As noted above, the case really involves only a simple stock transfer sale.

Pursuant to § 25-824(2), attorney fees are allowed against a party who has defended a civil action by alleging a defense which is determined to be frivolous. The term "frivolous," as used in the section, "connotes an improper motive or a legal position wholly without merit." *Lutheran Medical Center v. City of Omaha*, 229 Neb. 802, 811, 429 N.W.2d 347, 353 (1988). The Agency has not advanced any evidence or theory

constituting a defense to plaintiff's claim for payment. The Agency's defense is frivolous within the meaning of § 25-824(2).

It is clear from the record that the Agency's defense was frivolous. The termination agreement clearly provided in no uncertain terms that the termination agreement "contains the entire agreement of the parties" with respect to the sale of stock and termination of employment. Consequently, the Agency is precluded under that agreement from withholding payment for any reason not contained therein. The plaintiff is entitled to attorney fees because all of the Agency's defenses are wholly without merit.

The cause is remanded on plaintiff's cross-appeal for determination of an appropriate attorney fee for services of plaintiff's attorney in the trial court, as set out in § 25-824.01. Plaintiff is allowed the sum of $3,500 for attorney fees in this court.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.