STATE OF NEBRASKA EX REL. KILLIAN K. MOONEY, APPELLANT, V.
SCOTT I. DUER, APPELLEE.

487 N.W.2d 575

Filed April 28, 1992.    No. A-90-084.

Robert M. Spire, Attorney General, and Royce N. Harper for appellant.

No appearance for appellee.

SIEVERS, Chief Judge, and HANNON and WRIGHT, Judges.

SIEVERS, Chief Judge.

In this paternity case, the State appeals the district court's decision which assessed attorney fees against the State on a finding that the lawsuit brought against Scott I. Duer was frivolous and without merit.

Kristi Mooney gave birth to a child on March 10, 1988. On May 15, 1989, Kristi Mooney reported to Jill Brase, a child support worker for the Department of Social Services, that Duer was the father of her child. In a questionnaire, she named Duer as the father of the child, said they had had intercourse

only on July 24, 1987, and said she had not had intercourse with anyone else except Duer in the 11 months prior to the birth of her child. However, she was unable to describe where she and Duer had had sexual intercourse and could not provide any other answers on the questionnaire which would tend to show that Duer was in fact the father. The worker sent a letter to Duer on May 15, 1989, requesting that he contact her office. Shortly thereafter, Duer came to the worker's office, was told of the paternity allegation, and was requested to submit to voluntary blood testing. Duer stated that he wished to contact an attorney first and that he would get back to the worker at a later date. In this conversation, Duer denied paternity.

On May 30, 1989, Duer's attorney contacted the worker and requested DNA testing to be paid for by the State. In this conversation with Duer's attorney, the worker advised him that the mother had also named someone else as the father of the child and that some other worker had pursued that individual in the past.

The worker sent Duer a memo on July 21, 1989. Duer contacted the worker on August 2, stating that he would be in on August 3, but he did not keep this appointment.

On August 4, 1989, the child support worker sent the paternity action to the wrong county. The case was later referred to the county attorney for York County, the proper county, on August 9. Duer contacted the worker on August 10 and stated that he would go to the laboratory on August 12 or 14 to have his blood tested. Duer had his blood drawn at Roche Biomedical Laboratories in Lincoln on August 15. He then contacted the worker and told her that his blood sample had been drawn. At that point, the worker contacted the mother to have blood samples taken from her and the child. On August 15, the mother's and child's blood was also drawn at the laboratory. The worker did not inform the York County Attorney of the pendency of the blood tests, nor did she request the paternity action be stopped until the results of the blood tests were obtained.

On August 22, 1989, the York County Attorney filed a petition to determine paternity and for child support against Duer. The results of the blood testing became available

September 12, and stated, "[T]he alleged father cannot be the biological father of the child."

Duer's motion for costs and attorney fees was tried on November 21, 1989. On December 21, the district court held that the judgment of dismissal, previously entered on October 24, was entered without consideration of Duer's counterclaim and therefore was vacated and set aside. The court then held that the paternity action was without merit and was frivolous. Duer's attorney fees were assessed against the State, in the amount of $535, plus costs. The State appeals this decision, claiming that the action against Duer was not frivolous. The State does not contest the amount of the fee, the district court's jurisdiction, or the jurisdiction of this court.

A paternity action is an action at law. *State v. Smith*, 231 Neb. 740, 437 N.W.2d 803 (1989). In filiation proceedings tried to the court without a jury, the findings of the trial court have the same effect as a jury verdict, and such findings will not be disturbed unless clearly wrong. *Gregory v. Davis*, 214 Neb. 408, 334 N.W.2d 1 (1983). In the recent case *Millard v. Hyplains Dressed Beef*, 237 Neb. 907, 468 N.W.2d 124 (1991), a legal action for wrongful death, the Nebraska Supreme Court considered the issue of whether sanctions should be imposed for an allegedly frivolous claim. The court adopted the U.S. Supreme Court's position that "an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a federal district court's determination of sanctions." *Id.* at 914-15, 468 N.W.2d at 129, citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990). Accordingly, we review the award of attorney fees to determine if it was an abuse of discretion by the district court.

Neb. Rev. Stat. § 43-1412 (Reissue 1988) provides that in an action to establish paternity,

> [i]f it is not determined in the proceeding that the alleged father is actually the father of the child, the court shall, if it finds that the action was frivolous, award court costs and attorney's fees incurred by the alleged father, with such costs and fees to be paid by the plaintiff.

Frivolous has not been defined by Nebraska case law with regard to the award of attorney fees under this statute.

However, under Neb. Rev. Stat. § 25-824 (Reissue 1989), attorney fees are allowed against any party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith. In *Lutheran Medical Center v. City of Omaha*, 229 Neb. 802, 429 N.W.2d 347 (1988), the court had to define the term "frivolous" as a prerequisite for the assessment of fees under § 25-824. There, it was stated that the offending party had demonstrated a disdain for common law and common sense. The court placed reliance on *Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063 (Colo. 1984). The court in *Lutheran Medical Center* used the Colorado decision, as well as *Shanks v. Johnson Abstract & Title*, 225 Neb. 649, 407 N.W.2d 743 (1987), to characterize frivolous as "a legal position wholly without merit, that is, without rational argument based on law and evidence to support a litigant's position in the lawsuit." *Lutheran Medical Center*, 229 Neb. at 814, 429 N.W.2d at 354.

There is no reason to use a different definition for frivolous under § 43-1412 than is used under § 25-824(2). Accordingly, we hold that under § 43-1412, the term "frivolous" connotes a paternity suit brought for an improper motive or premised upon a legal position so wholly without merit as to be without rational argument in the law or evidence. See, also, *Behrens v. American Stores Packing Co.*, 236 Neb. 279, 460 N.W.2d 671 (1990); *Peterson v. Don Peterson & Assoc. Ins. Agency*, 234 Neb. 651, 452 N.W.2d 517 (1990).

The State contends the filing of the paternity petition was meritorious and not frivolous. Central to the State's argument is the principle that the mother is a competent witness on the issue of the child's paternity, as held in *Roebuck v. Fraedrich*, 201 Neb. 413, 267 N.W.2d 759 (1978). We certainly do not disagree with that principle; however, the fact that the mother can testify on the issue of who fathered her child does not resolve the issue of whether this is a frivolous lawsuit. However, § 43-1412 and pertinent case law require that the mother's testimony be corroborated. See *Gregory v. Davis*, 214 Neb. 408, 334 N.W.2d 1 (1983).

The employer of the worker, the Department of Social Services, is a state agency created for the purpose of aiding the

Governor in the execution of the laws of the state. See Neb. Rev. Stat. § 81-101 (Supp. 1991). Under Neb. Rev. Stat. § 43-503 (Reissue 1988), the department is given broad powers to promote child welfare and health. The department is actively involved in paternity matters, and in the instant matter, it was the worker who referred the case to the York County Attorney, the State of Nebraska's legal representative. Accordingly, to determine whether the action was frivolous, we review the motive and the legal position of the State, considering particularly the knowledge and actions of the worker, who represents the State of Nebraska in this situation. This is because she, along with the York County Attorney, is the State's representative, and it was only through them that the State acted when it sued Duer.

If we were to look at the motive for the lawsuit, we could infer that the paternity suit was filed based on the support worker's displeasure with what she perceived as delay on Duer's part in submitting to the blood test. We could also infer the State sought to avoid paying the costs of the alleged father's blood test, which the State could avoid if the test was done as a result of the lawsuit rather than voluntarily. There is some support for either conclusion in the record. However, rather than attempt to discern motive by inference, we look to the legal position of the State, which includes consideration of what the worker and the county attorney knew, when they knew it, what they did with the information they had, and when they did it.

As of August 15, 1989, the worker knew that the mother claimed intercourse with Duer on only one date, July 24, 1987, but the mother could not state where it had occurred. The worker knew the mother had previously named someone else as the father. The worker knew that Duer, the mother, and the child had had blood drawn on August 15, 1989, for paternity testing purposes, and that the results would be forthcoming. As of August 15, the worker knew a lawsuit was not needed to compel a blood test from Duer. She knew Duer to be a farmer in the community, and she had no reason to believe he would leave the jurisdiction. Given this knowledge, we believe that common sense, as well as fundamental fairness, required the State to wait for the results of the blood test before bringing a lawsuit

which would publicly accuse Duer of being the father of the child. Instead, the State, acting through the worker, chose not to withhold the lawsuit, but filed it on August 22, 1989. We conclude that the mother's claim was obviously extremely tenuous, both from a factual and a credibility standpoint. We wonder whether the worker or the county attorney considered that the baby weighed 7 pounds 13 ounces at birth, that the baby was described as "full term" in the mother's questionnaire, that intercourse allegedly occurred on July 24, 1987, and that the baby was born March 10, 1988. The significance of these facts is that in a normal menstrual cycle, ovulation generally occurs about 14 days after the last menstrual period; normal gestation is 280 days from the last normal menstrual period; and infants born prior to the 37th week (259 days) are classed as premature. Taber's Cyclopedic Medical Dictionary 677, 1196 (15th ed. 1985). Therefore, given alleged intercourse on only the 24th of July, one must count the 280 days from July 10 to determine normal gestation. If this baby was conceived on July 24, she could not be considered full term, but, rather, would be classed as a premature infant born in the 34th week. The mother's claim was obviously lacking in credibility for many reasons.

The tenuous nature of the mother's claim that Duer was the father, coupled with the knowledge of the worker that blood had been drawn from all necessary parties (7 days before suit), with results shortly available, causes us to hold that the institution of the suit against Duer on August 22, 1989, was a legal position wholly without merit.

There is no rational argument based on the evidence or law which supports suing Duer at that point in time. Given what the worker knew about the mother's claim and the pendency of the blood tests, the denial of paternity by Duer was entitled to at least the same degree of consideration and respect as the mother's claim. The State did not accord him this. The State is deemed to know that corroboration of the mother's testimony is required. See, § 43-1412; *Gregory v. Davis, supra.* Duer was unnecessarily sued on an obviously tenuous claim at a time when blood test results were shortly forthcoming.

We hold the trial court was correct in assessing attorney fees

against the State on a finding that the State's position was frivolous. We are not affirming the award of attorney fees merely because the blood test results said "the alleged father cannot be the biological father of the child." We are affirming the award because the State's legal position in filing the paternity suit, which can only be characterized as an "errant shot in the dark," was wholly without merit and therefore frivolous. The trial court awarded the full amount of the fees incurred by Duer, which included services rendered by his attorney prior to the filing of the lawsuit. Since it is the filing of the lawsuit which we find to be frivolous, it naturally follows that the State is liable only for the attorney fees incurred after the suit was filed. The district court abused its discretion in awarding fees for legal services prior to the time suit was filed by the State. Therefore, we reverse, and we remand the cause with directions to reduce the award of fees to the sum of $457.89, the amount of fees shown by the evidence to have been incurred after the State sued Duer plus the amount of expenses. No fees are assessed for this appeal, as Duer's attorney made no appearance in this court.

REVERSED AND REMANDED WITH DIRECTIONS.

HANNON, Judge, dissenting.

I disagree with my colleagues and must respectfully dissent for the following reasons:

I do not believe the State is a party to this action, but if it is viewed as a party, I would analyze the case in this manner. In deciding *Millard v. Hyplains Dressed Beef*, 237 Neb. 907, 915, 468 N.W.2d 124, 130 (1991), the Supreme Court stated, "[S]anctions should not be imposed except in the clearest cases." See *First Nat. Bank v. Chadron Energy Corp.*, 236 Neb. 199, 459 N.W.2d 736 (1990). *First Nat. Bank* cited *Shanks v. Johnson Abstract & Title*, 225 Neb. 649, 407 N.W.2d 743 (1987), and said, "This court has adopted the position that all doubts as to whether an action is frivolous should be resolved in favor of the petitioner, and sanctions should not be imposed except in the clearest cases." *First Nat. Bank*, 236 Neb. at 201, 459 N.W.2d at 739. I agree with the definition of frivolous stated by the majority as "a legal position wholly without merit, that is, without rational argument based on law and evidence to

support a litigant's position in the lawsuit." *Lutheran Medical Center v. City of Omaha*, 229 Neb. 802, 814, 429 N.W.2d 347, 354 (1988). Or stated in another way, "[t]he term 'frivolous,' as used in [§ 25-824(2)], 'connotes an improper motive or a legal position wholly without merit.' " *Peterson v. Don Peterson & Assoc. Ins. Agency*, 234 Neb. 651, 658, 452 N.W.2d 517, 522 (1990).

The action was commenced by the York County Attorney on August 22, 1989. At that time, the blood had been drawn for the blood test, but the results were not available and did not become available until September 12, 1989. The caseworker may have had reasons for not reposing complete confidence in the allegations of Kristi Mooney, but that caseworker would be in no different position than most caseworkers handling such matters and many attorneys starting or defending lawsuits that must rely upon the veracity of persons whose past conduct would lead a reasonable person to question their reliability. Neither the Department of Social Services (DSS) nor the county attorney should be required to judge the veracity of the mother to avoid being found to be frivolous.

It may seem that the filing of the action was done too quickly, when the blood test would have resolved the matter. In recent times, paternity suits such as this one are all too common. Many alleged fathers delay the proceedings because they realize they do not pay child support until the judgment determining paternity is entered. The public officials charged with attempting to get fathers to support their children realize that the alleged fathers have a considerable motive to delay and that they do delay. Public officials charged with attempting to collect child support can fight this delay by quickly filing paternity actions and bringing them to trial as soon as possible. Neb. Rev. Stat. § 43-512.01 (Reissue 1988) provides the county shall "immediately take action against the nonsupporting parent." The county attorney in this case followed the statute, just as other conscientious county attorneys do, and should do. At the time the action was filed, all those involved would have realized the action could quickly be dismissed if the paternity test proved the respondent was not the father. I also find the fee of $535 ludicrously high to obtain a dismissal, when a blood test

showing lack of paternity would have been available before answer day. Under the conditions of the real situation, the evidence does not establish that the State was acting with improper motives or that its legal position was wholly without merit, particularly if all doubt is resolved in favor of the State, as we are required to do.

There is a separate reason why I cannot accept the majority's position. In the recent case *State on behalf of Garcia v. Garcia*, 238 Neb. 455, 471 N.W.2d 388 (1991), a district court taxed the attorney fees of a special prosecutor appointed by the court in a paternity action against the Department of Social Services. On its own motion, the court reversed this allowance under the plain error doctrine, on the basis that such fees could not be taxed against the State without the Legislature specifically providing for it. In making that decision, the Supreme Court said:

> In this case the district court entered judgment for the special prosecutor's fees against DSS. The judgment was entered as a result of the State's prosecution of Robert Garcia for child support payments and is the equivalent of a suit against the State. *We do not find any statute in which the Legislature has permitted a judgment for attorney fees to be entered against the State in an action for child support payments.* In our review of articles 1, 2, 5, 7, 9, and 14 of chapter 43 of the Nebraska statutes, we note that DSS bears the cost of various services performed for the protection of juveniles in this state. See, Neb. Rev. Stat. §§ 43-258(4) and 43-284.02 (Reissue 1988).

> The various costs borne by DSS do not include payment of fees incurred by a special prosecutor appointed by the court in a child support action. *The Legislature has made no provision for payment of attorney fees by DSS in child support actions, and thus any judgment against the State for these fees violates state sovereignty.*

(Emphasis supplied.) *Garcia*, 238 Neb. at 459, 471 N.W.2d at 391. I am of the opinion that the above authority prevents a district court from awarding attorney fees under Neb. Rev. Stat. § 43-1412 (Reissue 1988).

Furthermore, I do not believe the State of Nebraska could be

a party to a paternity suit when this action was commenced, in 1989. Neb. Rev. Stat. § 43-1411 (Reissue 1988) provides that a civil proceeding to establish paternity may be instituted by the mother, the father, the guardian, or the next friend of the child. Effective September 6, 1991, § 43-1411 was amended to allow the State to bring such actions. The title to this case is *State of Nebraska ex rel. Killian K. Mooney, Petitioner, v. Scott I. Duer, Respondent.* Insofar as I can ascertain, this style has proper application only to mandamus actions, *City of Crawford v. Darrow*, 87 Neb. 494, 127 N.W. 891 (1910), and in quo warranto actions, see Neb. Rev. Stat. § 25-21,134 (Reissue 1989). The term "ex rel.," or ex relatione, is defined as "[l]egal proceedings which are instituted by the attorney general (or other proper person) in the name and behalf of the state, but on the information and at the instigation of an individual who has a private interest in the matter . . . ." Black's Law Dictionary 582 (6th ed. 1990). It is worth noting that in *State on behalf of Garcia v. Garcia, supra,* the title to the case uses what I regard as a more proper style. I do not believe the State can be a party to a paternity action—at least, it could not be before September 6, 1991—and therefore we cannot assume the Legislature intended to allow attorney fees to be taxed under § 43-1412 when that section was last amended, in 1986. See § 43-1412 (Reissue 1988). I realize that the State did in fact bring paternity actions under the ex rel. designation, and indeed, DSS and the county attorneys were required to do so under Neb. Rev. Stat. §§ 43-512.01 through 43-512.03 (Reissue 1988) at least since 1987 and probably before, but they were not authorized to do so under article 14 of chapter 43 of the Nebraska statutes. I point out these matters because I believe they are relevant to an understanding of why I believe the Legislature did not intend to require the State to pay attorney fees.

For the above reasons, I would reverse the decision of the district court and return the matter with direction to dismiss the application for attorney fees.