OPINION OF THE NEBRASKA COURT OF APPEALS

(Designated for Permanent Publication)


NOTICE: DUE TO UNFORESEEN CIRCUMSTANCES, THIS OPINION IS BEING POSTED TEMPORARILY IN "SLIP" OPINION FORM. IT WILL BE REPLACED AT A LATER DATE WITH AN "ADVANCE"OPINION, WHICH WILL INCLUDE A CITATION.


Case Title


SBC, INC., A NEBRASKA PARTNERSHIP, APPELLANT AND CROSS-APPELLEE,
V.
WILLIAM A. CUTLER III, PERSONAL REPRESENTATIVE OF THE ESTATE OF
WILLIAM A. CUTLER, JR., APPELLEE AND CROSS-APPELLANT.


Case Caption

SBC V. CUTLER


Filed April 19, 2016.    No. A-14-905.


Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Affirmed in part, and in part reversed.

Jason M. Bruno and Thomas D. Prickett, of Sherrets, Bruno & Vogt, L.L.C., for appellant.

David S. Houghton and Keith A. Harvat, of Houghton, Bradford & Whitted, P.C., L.L.O., for appellee.

SBC v. CUTLER

Filed April 19, 2016.   No. A-14-905.

1. **Corporations: Equity: Liability.** Proceedings seeking disregard of corporate entity, that is, piercing the corporate veil to impose liability on a shareholder for a corporation's debt or other obligation, are equitable actions.
2. **Equity: Judgments: Appeal and Error.** In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court; however, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
3. **Attorney Fees: Appeal and Error.** On appeal, a trial court's decision allowing or disallowing attorney fees for frivolous or bad faith litigation will be upheld in the absence of an abuse of discretion.
4. **Corporations: Proof: Fraud.** A plaintiff seeking to pierce the corporate veil must allege and prove that the corporation was under the actual control of the shareholder and that the shareholder exercised such control to commit a fraud or other wrong in contravention of the plaintiff's rights.
5. **Corporations: Liability: Proof: Fraud.** A plaintiff seeking to impose liability for a corporate debt on a shareholder has the burden to show by a preponderance of the evidence that the corporate identity must be disregarded to prevent fraud or injustice to the plaintiff.
6. **Attorney Fees.** Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.
7. **Attorney Fees: Costs.** Customarily, attorney fees and costs are awarded only to prevailing parties, or assessed against those who file frivolous suits.
8. **Actions: Attorney Fees.** Neb. Rev. Stat. § 25-824 (Reissue 2008) allows for an award of attorney fees when a party brings a frivolous action that is without rational argument based on law and evidence.
9. **Actions: Attorney Fees: Words and Phrases.** The term "frivolous" connotes an improper motive or legal position so wholly without merit as to be ridiculous.
10. **Actions.** Any doubt about whether a legal position is frivolous or taken in bad faith should be resolved for the party whose legal position is in question.
11. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

IRWIN, RIEDMANN, and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

SBC, Inc., appeals, and William A. Cutler III, as personal representative of the estate of William A. Cutler, Jr. (the estate), cross-appeals, from an order of the district court for Douglas County, which order denied SBC's request to pierce the corporate veil of Related Investments, Inc., and hold the estate liable for a judgment previously entered against Related Investments. SBC also appeals from the district court's order which awarded the estate approximately $140,000 in attorney fees. For the reasons set forth herein, we affirm the district court's decision denying SBC's request to pierce the corporate veil of Related Investments. However, we reverse the court's order awarding the estate any attorney fees.

## II. BACKGROUND

### 1. PROCEDURAL HISTORY

In May 2007, the district court for Douglas County entered a judgment in the amount of $159,822.14 against Related Investments and in favor of SBC. This judgment relates to a promissory note that was signed by H. Michael Cutler (Michael) personally and as vice president of Related Investments. The promissory note provided that Michael owed a little over $150,000 to Sherrets & Boecker LLC. Michael defaulted on timely paying the amount due under the promissory note. Ultimately, Sherrets & Boecker assigned its interest in the promissory note to SBC.

In July 2007, approximately 2 months after the judgment was entered against Related Investments, SBC filed a complaint against Michael and William A. Cutler, Jr. (William). William was Michael's father. The complaint sought to pierce the corporate veil of Related Investments to hold Michael and William personally liable for the May 2007 judgment. The complaint alleged that Michael and William were the "shareholders, principals, and alter egos of" Related Investments.

While the action was pending in district court, both Michael and William died. Subsequent to their deaths, SBC filed a motion to revive the action against the estate, and the district court granted this motion. No action was taken against Michael's estate.

On April 17, 2012, SBC filed an amended complaint against the estate. In the amended complaint, SBC asserted that the court should pierce the corporate veil of Related Investments to hold the estate liable for the May 2007 judgment, because William was a "shareholder, principal, and alter ego" of Related Investments and because William "disregarded corporate formalities and the corporate form, . . . exercised complete dominion and control over the entity, and [had] interests . . . that . . . were wholly intertwined and one and the same" as Related Investments.

The estate filed an answer to the amended complaint on May 3, 2012. In the answer, the estate raised various affirmative defenses to SBC's claims, including that the claim was barred by the doctrine of unclean hands and by equitable estoppel.

On September 4, 2012, SBC filed a motion for summary judgment, which the district court denied. The case then proceeded to a bench trial in August and September 2013.

## 2. FACTUAL BACKGROUND

The events which gave rise to this appeal began in 2006, when Michael became involved in litigation involving a certain piece of real property located in Omaha, Nebraska. Sherrets & Boecker represented Michael during this litigation. In fact, Sherrets & Boecker had been Michael's attorneys for an extended period of time and, at the time of the 2006 litigation, Michael owed the firm a little over $100,000 in past-due legal fees.

The 2006 litigation ended when Michael and the other parties involved entered into a settlement agreement. This settlement agreement included a $310,000 payment to Michael and an option to buy certain real property at a reduced price. Related Investments was created and incorporated in conjunction with this settlement agreement for the purpose of acting on the option to purchase the real property. Evidence presented at trial revealed that Michael and William attended a meeting with an accountant in December 2006 concerning the incorporation of Related Investments. After this meeting, articles of incorporation were filed with the Secretary of State, but no other corporate documents were ever signed or finalized. On December 5, the option agreement was signed by William, as president of Related Investments. Of the $310,000 in settlement proceeds received by Michael, $10,000 went toward securing the option to buy the real estate.

After the $10,000 in settlement proceeds was paid to secure the option agreement, Michael had paid Sherrets & Boecker a total of $155,000, or 50 percent of the original proceeds, pursuant to his agreement with the firm. How the remaining $145,000 in settlement proceeds was disbursed was disputed at trial.

SBC presented evidence to demonstrate that Sherrets & Boecker should have received this money as payment for previous legal fees owed by Michael. However, Sherrets & Boecker decided to loan this money to Related Investments so that at least $100,000 could be put into an escrow account to help secure the financing to act on the option agreement. As a part of Sherrets & Boecker's agreement to loan Related Investments the remaining $145,000 in settlement proceeds, Michael agreed to sign the December 2006 promissory note both individually and as the vice president of Related Investments.

The estate, on the other hand, presented evidence to demonstrate that the remaining $145,000 was Michael's share of the settlement proceeds and that Michael assigned his interest in these proceeds to William as repayment for a previous loan made to him. The parties agree that Sherrets & Boecker did issue a check to William for $145,000. And the evidence revealed that $101,000 of these proceeds was placed into a bank account for Related Investments.

Ultimately, Related Investments failed to secure the financing necessary to go forward with the option agreement. Evidence revealed that the $101,000 deposited into Related Investments' bank account was not utilized for business expenditures and was not put into escrow, but was instead used to pay off what appeared to be personal expenses of either Michael or William. Sherrets & Boecker also never received any repayment on the December 2006 promissory note. As we discussed above, SBC received a judgment against Related Investments for the balance of that note plus interest. SBC's effort to collect on this judgment is the subject of the current appeal.

At trial, SBC presented evidence to demonstrate that William was in control of Related Investments and that he had used this control to fraudulently deprive Sherrets & Boecker of the money it loaned to the corporation. In order to prove William was in control of Related Investments, SBC pointed to the evidence which demonstrated that William attended the meeting with Michael about incorporating Related Investments. In addition, many unsigned corporate documents list William as an officer, board member, and shareholder of Related Investments. William also signed the option agreement as president of Related Investments. And financial documents associated with the bank account of Related Investments bear what appears to be William's signature. An application for an employer identification number from the federal government lists William as the chief financial officer of Related Investments and includes his Social Security number.

To the contrary, the estate presented evidence to demonstrate that William did not have any involvement with, or knowledge of, Related Investments. The estate relied heavily on the deposition testimony of William, which he provided in May 2008. In William's testimony, he specifically stated that he had no knowledge of Related Investments and that he was never an officer, director, or employee of Related Investments. William did testify that he attended a meeting with Michael and an accountant at some point in time, but that his understanding was the meeting was about a problem Michael was having due to a tax lien. In addition to William's testimony about this meeting, the accountant testified and indicated that the meeting was "driven by" Michael. In his deposition testimony, William admitted that he signed the option agreement and that the signature line indicated he was president of Related Investments. However, he indicated that it was a document Michael asked him to sign and that he did so without questioning Michael about it. William also testified that most of the financial documents associated with Related Investments' bank accounts were not signed by him, but by someone forging his signature. Of the documents that he admitted bore his signature, he indicated that he did not have any knowledge about the documents, but that Michael asked him to sign and he did so. He testified that he did not receive any of the funds from Related Investments' bank account. The personal representative of the estate testified at trial that he was involved in the daily life of his father, William, and that he had no knowledge of William's involvement in Related Investments.

### 3. TRIAL COURT'S ORDERS

After the trial, the district court entered a lengthy order detailing its factual findings and ultimately declining SBC's request to pierce the corporate veil of Related Investments to hold the estate liable for the May 2007 judgment entered against Related Investments. The court based this decision, in part, on its finding that SBC failed to meet its burden to establish that William was a shareholder or was in actual control of Related Investments. The court found that SBC's evidence that William was an active and controlling member of Related Investments was not credible in light of William's deposition testimony.

After the court entered its order, SBC filed a motion for new trial and a motion to alter or amend the judgment. The court overruled both motions. The court then entered an order awarding the estate $139,799 in attorney fees. The court relied on Neb. Rev. Stat. § 25-824 (Reissue 2008) as the basis for this award.

SBC appeals from the trial court's order denying its request to pierce the corporate veil of Related Investments and its order awarding the estate attorney fees.

## III. ASSIGNMENTS OF ERROR

On appeal, SBC asserts, restated and consolidated, that the district court erred in (1) not piercing the corporate veil of Related Investments, (2) denying SBC's motion for a directed verdict and its motion to alter or amend the judgment, (3) not admitting into evidence certain admissions made by Michael prior to his death, (4) awarding attorney fees to the estate, and (5) not admitting into evidence an affidavit from its counsel regarding the reasonableness of the estate's attorney fees.

On cross-appeal, the estate asserts that the district court erred in failing to specifically rule on whether its affirmative defenses of unclean hands and equitable estoppel barred any recovery by SBC.

## IV. STANDARD OF REVIEW

[1,2] Proceedings seeking disregard of corporate entity, that is, piercing the corporate veil to impose liability on a shareholder for a corporation's debt or other obligation, are equitable actions. *Christian v. Smith*, 276 Neb. 867, 759 N.W.2d 447 (2008). In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court; however, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014).

[3] On appeal, a trial court's decision allowing or disallowing attorney fees for frivolous or bad faith litigation will be upheld in the absence of an abuse of discretion. *Central Neb. Pub. Power Dist. v. North Platte NRD*, 280 Neb. 533, 788 N.W.2d 252 (2010).

## V. ANALYSIS

### 1. PIERCING CORPORATE VEIL OF RELATED INVESTMENTS

SBC asserts that the district court erred in failing to pierce the corporate veil of Related Investments to hold the estate liable for the May 2007 judgment entered against Related Investments. In conjunction with this assertion, SBC also argues that the court erred in overruling its motion for directed verdict and its motion to alter or amend the judgment. Essentially, all three of these assigned errors allege that the evidence presented at trial "overwhelmingly justifies piercing the corporate veil of Related [Investments.]" Brief for appellant at 12. Upon our review of the record, we conclude that SBC's assertions do not have merit. We affirm the decision of the district court which declined to pierce the corporate veil of Related Investments.

Generally, a corporation is viewed as a complete and separate entity from its shareholders and officers, who are not, as a rule, liable for the debts and obligations of the corporation. *Christian v. Smith, supra*. A court will disregard a corporation's identity only where the corporation has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or

unjust act in contravention of the rights of another. *Id.* A corporation's identity as a separate legal entity will be preserved, as a general rule, until sufficient reason to the contrary appears. *Id.*

[4,5] A plaintiff seeking to pierce the corporate veil must allege and prove that the corporation was under the actual control of the shareholder and that the shareholder exercised such control to commit a fraud or other wrong in contravention of the plaintiff's rights. *Id.* A plaintiff seeking to impose liability for a corporate debt on a shareholder has the burden to show by a preponderance of the evidence that the corporate identity must be disregarded to prevent fraud or injustice to the plaintiff. *Id.*

In the district court's order, it concluded that the estate could not be liable for the judgment entered against Related Investments because SBC failed to establish that William was a shareholder or was in actual control over Related Investments:

> The evidence establishes that [Michael] exercised control over Related Investments and his father, William . . . , was unaware of all of the agreements, negotiations, disagreements and disputes between his son and Sherrets [&] Boecker regarding the corporation, settlement agreement or option agreement. . . . In addition, there was no evidence offered that it was William . . . who directed funds from [the bank] account of Related Investments to be paid to other people. The Court finds that [SBC] has failed to meet its burden to establish that William . . . was a shareholder or was in actual control of Related Investments.

SBC contests the court's finding that William was not in actual control of Related Investments. SBC points to evidence in the record which demonstrated that William was, in fact, a controlling force behind Related Investments. Such evidence includes William's attendance at a meeting between Michael and an accountant about incorporating Related Investments; unsigned corporate documents listing William as an officer, board member, and shareholder of Related Investments; William's signature as president of Related Investments on the option agreement; William's purported signature on financial documents associated with the bank account of Related Investments; and an application for an employer identification number from the federal government which listed William as the chief financial officer of Related Investments and which included his Social Security number.

We recognize that there was evidence presented which demonstrated that William was in control of Related Investments. However, we also recognize that there was a great deal of conflicting evidence which demonstrated that William had no control over Related Investments. This evidence includes William's deposition testimony that he did not even know Related Investments existed and that he had absolutely no knowledge of its business dealings. William testified that most of the signatures on the financial documents of Related Investments were not his and that those signatures that were his came as a result of Michael's telling William to sign a document.

In the district court's order, it clearly indicated that it found the evidence presented by SBC concerning William's involvement with Related Investments not to be credible. In fact, the court found that Sherrets & Boecker knew, or should have known, that William was not involved with Related Investments. As we explained above, when the evidence is in conflict, we give deference to the trial court's determinations of credibility. See *Torres v. Morales*, 287 Neb. 587,

843 N.W.2d 805 (2014). And when we consider the conflicting evidence about William's involvement with Related Investments, giving deference to the district court's findings of credibility, we cannot say that the district court erred in concluding that William was not in actual control of Related Investments.

Because William was not in actual control of Related Investments, his estate cannot, as a matter of law, be held liable for the judgment entered against Related Investments. The district court did not err in deciding not to pierce the corporate veil of Related Investments.

We note that in SBC's brief on appeal, it asserts that the district court erred in failing to admit into evidence exhibit 85, which was Michael's responses to SBC's requests for admissions. In one of Michael's responses, he indicated that William was a shareholder of Related Investments. Given the district court's finding that William was not in actual control of Related Investments and our affirmance of that finding, we conclude that if the district court erred in excluding this evidence, such error would be harmless.

Even if William was a named shareholder in Related Investments, SBC would still have had to prove that he was in actual control of the corporation. See *Christian v. Smith*, 276 Neb. 867, 759 N.W.2d 447 (2008). As we discussed above, the district court found that SBC failed to prove that William was in actual control of the corporation. As a result, it does not matter whether he was a shareholder. SBC's assertion about the admissibility of this exhibit is without merit.

## 2. ATTORNEY FEES

SBC also asserts that the district court erred in awarding the estate $139,799 in attorney fees. SBC asserts that its claim against the estate was not frivolous and that, as a result, the court did not have any authority to enter an award of attorney fees. SBC also asserts that even if the district court had the authority to enter an award of attorney fees, the amount of the award was not reasonable. In conjunction with this assertion, SBC argues that the district court erred in excluding from evidence an exhibit which was an affidavit concerning the reasonableness of the proposed attorney fees.

Upon our review of the record, we conclude that the district court abused its discretion in awarding the estate any attorney fees. Because there was some evidence to support SBC's claim against the estate, the claim was not frivolous.

[6,7] Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. See *Boamah-Wiafe v. Rashleigh*, 9 Neb. App. 503, 614 N.W.2d 778 (2000). Customarily, attorney fees and costs are awarded only to prevailing parties, or assessed against those who file frivolous suits. *Id*. Here, the district court based its award of attorney fees to the estate on § 25-824. Subsection (2) of § 25-824 provides as follows:

> Except as provided in subsections (5) and (6) of this section, in any civil action commenced or appealed in any court of record in this state, the court shall award as part of its judgment and in addition to any other costs otherwise assessed reasonable attorney's fees and court costs against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith.

[8-10] The Nebraska Supreme Court has held that the statutory language in § 25-824 allows for an award of attorney fees when a party brings a frivolous action that is without rational argument based on law and evidence. *White v. Kohout*, 286 Neb. 700, 839 N.W.2d 252 (2013). The term "frivolous" connotes an improper motive or legal position so wholly without merit as to be ridiculous. *Id*. Attorney fees for a bad faith action under § 25-824 may also be awarded when the action is filed for purposes of delay or harassment. *White v. Kohout, supra*. The Supreme Court has also held that any doubt about whether a legal position is frivolous or taken in bad faith should be resolved for the party whose legal position is in question. *Id*.

In its order, the district court found that SBC's claim against the estate was frivolous because it knew or should have known prior to the time of trial that William was not involved with or in control of Related Investments. In fact, the court indicated its belief that "[c]ertainly after the deposition of William . . . , all parties were aware William . . . was not a shareholder in [Related Investments]." The court's finding clearly indicates its belief that the testimony presented by the estate, and in particular, the deposition testimony of William, was credible evidence demonstrating William's lack of involvement with Related Investments.

As we discussed more thoroughly above, even though the district court found the estate's evidence to be more credible than SBC's evidence, SBC did, in fact, present conflicting evidence to demonstrate William's purported control of Related Investments. Such evidence included William's attendance at a meeting between Michael and an accountant about incorporating Related Investments; unsigned corporate documents listing William as an officer, board member, and shareholder of Related Investments; William's signature as president of Related Investments on the option agreement; William's purported signature on financial documents associated with the bank account of Related Investments; and an application for an employer identification number from the federal government which listed William as the chief financial officer of Related Investments and which included his Social Security number. Upon our review of the entire record, we conclude that the evidence presented by SBC is not particularly strong or particularly persuasive in light of the evidence presented by the estate. However, given that SBC did present some evidence to show that William was involved in the operation of Related Investments, we cannot say that SBC's claim was frivolous or "so wholly without merit as to be ridiculous." *White v. Kohout, supra*.

For the sake of completeness, we note that the district court's order awarding attorney fees to the estate pursuant to § 25-824 discusses certain actions taken by Sherrets & Boecker and by SBC. In particular, the court cites to Sherrets & Boecker's failure to preserve certain evidence with regard to its relationship with Michael. The district court concluded that the "evidence supported a finding of intentional spoliation" and that "it was very disturbing" the law firm had not preserved such evidence. To the extent that the district court may have based its attorney fees award on what it may have perceived as potentially unethical or questionable behavior by Sherrets & Boecker, such an award is not proper pursuant to § 25-824, which permits an award of attorney fees only when a claim is frivolous or brought in bad faith.

Because SBC's claim was not frivolous, the district court erred in awarding the estate any attorney fees pursuant to § 25-824. We reverse the district court's award of $139,799 in attorney fees to the estate.

Given our reversal of the award of attorney fees, we need not address SBC's other assigned errors regarding the reasonableness of the amount of the attorney fee award.

### 3. ESTATE'S CROSS-APPEAL

In the estate's answer to SBC's amended complaint, it asserted multiple affirmative defenses which it argued barred SBC's claim against it, including the doctrines of unclean hands and equitable estoppel. As we discussed above, the district court ultimately found that SBC's request to pierce the corporate veil of Related Investments to hold the estate liable for a judgment entered against Related Investments failed because SBC did not prove that William was in actual control of Related Investments. As a result of the district court's conclusion, it did not need to specifically rule on the applicability of the affirmative defenses raised by the estate. However, in its February 2014 trial order, the district court noted:

> The [estate] asserts that [SBC] cannot be granted equitable relief because it has unclean hands. The [estate] raised these affirmative defenses in its Answer under the doctrine of unclean hands and equitable estoppel. . . .
>
> . . . .
>
> . . . The Court has declined to pierce the corporate veil [of Related Investments], but even if the Court were to pierce the corporate veil, which it does not, the evidence supports the finding that [SBC's] claim would still fail. However, at this time it is unnecessary to fully analyze this affirmative defense.

In its cross-appeal, the estate argues that the district court erred in failing to specifically decide whether its affirmative defenses of unclean hands and equitable estoppel barred any recovery by SBC. Like the district court, we decline to address the estate's affirmative defenses, given our decision to affirm the district court's decision on the issue of piercing the corporate veil of Related Investments.

[11] In our analysis above, we determined that the district court did not err in failing to pierce the corporate veil of Related Investments to hold the estate responsible for a judgment entered against Related Investments. We also indicated that the district court did not err in dismissing SBC's claim against the estate. Accordingly, because we have already ruled in favor of the estate on this issue, we need not address the affirmative defenses raised by the estate. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Holdsworth v. Greenwood Farmers Coop.*, 286 Neb. 49, 835 N.W.2d 30 (2013); *Kobza v. Bowers*, 23 Neb. App. 118, 868 N.W.2d 806 (2015).

### VI. CONCLUSION

We affirm the decision of the district court to deny SBC's request to pierce the corporate veil of Related Investments because William was not in actual control of the corporation. However, we reverse the court's order awarding the estate any attorney fees.

AFFIRMED IN PART, AND IN PART REVERSED.

RIEDMANN, Judge, dissenting.

I concur with the majority that the district court did not err in denying SBC's request to pierce the corporate veil. I disagree, however, that the district court abused its discretion in

- 10 -

awarding attorney fees. The majority determines that "[b]ecause there was some evidence to support SBC's claim against the estate, the claim was not frivolous." It then sets forth what it identifies as "conflicting" evidence and concludes that although "not particularly strong or particularly persuasive" "given that SBC did present some evidence to show that William was involved in the operation of Related Investments, we cannot say that SBC's claim was frivolous or 'so wholly without merit as to be ridiculous.' *White v. Kohout*[, 286 Neb. 700, 839 N.W.2d 252 (2013)]."

Following the majority's rationale, no matter how "incredible" evidence may be, as long as there is "some" evidence for the court to weigh, a claim is not frivolous. This disregards the Nebraska Supreme Court's definition of frivolous that includes "a legal position wholly without merit, that is, without rational argument based on law and evidence to support a litigant's position in the lawsuit." *Lutheran Medical Center v. City of Omaha*, 229 Neb. 802, 814, 429 N.W.2d 347, 354 (1988). Because the determination of frivolous must be determined based on the facts of each case, *Randolph Oldsmobile Co. v. Nichols*, 11 Neb. App. 158, 645 N.W.2d 566 (2002), I would find no abuse of discretion in the district court's conclusion that SBC's action against William was frivolous.

In *State ex rel. Mooney v. Duer*, 1 Neb. App. 84, 487 N.W.2d 575 (1992), a paternity action, the State appealed the district court's decision which assessed attorney fees against the State on a finding that the lawsuit brought against a putative father was frivolous and without merit. Although we addressed the propriety of attorney fees for frivolous actions under Neb. Rev. Stat. § 43-1412 (Reissue 1988), we used case law interpreting Neb. Rev. Stat. § 25-824 (Reissue 1989) to determine the meaning of the term "frivolous." Because the State had filed the paternity action, we stated that to determine whether the action was frivolous, we had to "look to the legal position of the State, which includes consideration of what the worker and the county attorney knew, when they knew it, what they did with the information they had, and when they did it." *State ex rel. Mooney v. Duer*, 1 Neb. App. at 88, 487 N.W.2d at 577.

Reviewing what the social worker knew and when she knew it--including that the mother could not recall where the intercourse took place, that the mother had named another individual as the father, and that although the putative father, mother, and child all had blood drawn for paternity testing purposes, the results were not yet available--we determined that the filing of the paternity action was frivolous. We stated:

> The tenuous nature of the mother's claim that [the defendant] was the father, coupled with the knowledge of the worker that blood had been drawn from all necessary parties (7 days before suit), with results shortly available, causes us to hold that the institution of the suit against [the defendant] on August 22, 1989, was a legal position wholly without merit.

*Id.* at 89, 487 N.W.2d at 578.

*State ex rel. Mooney v. Duer, supra*, instructs that a party's knowledge of the facts governs the legitimacy of its claim. In the present case, by the time William's deposition was concluded, Sherrets & Boecker knew that although William attended a meeting with Michael to incorporate Related Investments, William took no active role in the meeting. Although corporate documents were drafted bearing William's name, he never signed them. Financial documents

that did contain William's signature were forged, and although William did sign the option agreement as president of Related Investments, he did so at Michael's command and without knowledge of its purpose. While the majority views this as conflicting evidence, the underlying fact that Sherrets & Boecker knew William did not exercise control over Related Investments is well established. Despite Sherrets & Boecker's many years of representing Michael, Sherrets & Boecker met William on only one occasion when William came to pick up the $145,000 check--a check the documentary evidence establishes Sherrets & Boecker knew represented the amount Michael assigned to William from the settlement proceeds as repayment for William's years of providing financial support to Michael. The "Settlement, Release and Option Agreement," drafted by James D. Sherrets himself, acknowledges this assignment. Any claim that this money represented a loan from Sherrets & Boecker is refuted in the documents that Sherrets was "unable" to produce but that Michael retained. The disappearance of the documents, along with the remaining facts of the case, was sufficient for the district court to conclude that "[t]here is no credible evidence that the $145,000 check issued to William . . . was some sort of a loan from Sherrets [&] Boecker." The district court further determined that there was "no credible evidence" that William directed any of the personal payments claimed by Sherrets. Most importantly, the district court determined that the evidence and testimony "clearly establishes that Sherrets [&] Boecker did not consider William . . . to be an active member" of the corporation.

When the evidence "clearly establishes" that a party knew the very basis for bringing an action did not exist, no rational argument in law or fact exists to maintain the action, and to continue pursuit of it is frivolous. Applying the language of *State ex rel. Mooney v. Duer*, 1 Neb. App. 84, 88, 487 N.W.2d 575, 577 (1992), considering "what [Sherrets] and [SBC] knew, when they knew it, what they did with the information they had, and when they did it," the district court did not abuse its discretion in determining the lawsuit was frivolous. I agree with the principle that where evidence is in conflict, an action is not frivolous; but where no credible evidence can be advanced because a party knows it has no rational basis for its position, attorney fees are warranted.

The standard of review on the district court's determination of a request for sanctions under § 25-824 is whether the district court abused its discretion. *Harrington v. Farmers Union Co-Op. Ins. Co.*, 13 Neb. App. 484, 696 N.W.2d 485 (2005). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*. Upon this record, I cannot say the district court abused its discretion in determining the lawsuit was frivolous. I would therefore affirm the award of attorney fees.